Larry BROWN, Petitioner–Appellant,

v.

Walter KELLY, Superintendent, Attica Correctional Facility, Respondent–Appellee.

No. 1504, Docket 91–2543.

United States Court of Appeals, Second Circuit.

Argued May 12, 1992.

Decided Aug. 19, 1992.

Alfred A. O'Connor, Hempstead, N.Y. (Matthew Muraskin and Kent V. Moston, Legal Aid Soc., Nassau County, of counsel), for petitioner-appellant.

Denis Dillon, Dist. Atty., Nassau County, Mineola, N.Y. (Peter A. Weinstein and Bruce E. Whitney, Asst. Dist. Attys., of counsel), submitted a brief for respondent-appellee.

Before: FEINBERG, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

We review on this appeal the reasons given by a state prosecutor for peremptorily excusing four black venirepersons from sitting as members of a petit jury on the murder trial of Larry Brown, a black defendant. Brown appeals from an October 18, 1991 order of the United States District Court for the Eastern District of New York (Mishler, J.) denying his petition for a writ of *habeas corpus*. Petitioner was convicted in New York in 1985 on two counts of murder in the second degree and one count of robbery in the first degree. His petition for *habeas*, relief attacks these convictions on the ground that the prosecutor exercised his peremptory challenges on the basis of the venirepersons' race in violation of the Equal Protection Clause of the Fourteenth Amendment. After a hearing, the district court denied the petition, ruling that the prosecutor had given legitimate, non-racial explanations for excusing the venirepersons. For the reasons set forth below, we affirm.

## BACKGROUND

In 1985 Larry Brown was tried in New York's Nassau County Court for the murder and robbery of Frederick Durr, a 73–

year–old white man. At the conclusion of jury selection defense counsel moved for a mistrial, alleging that the prosecution had used its peremptory challenges in a racially biased manner to exclude the only four black members of the jury venire. State law at the time did not require the prosecution to give reasons for its peremptory challenges. *See People v. McCray,* 57 N.Y.2d 542, 546–49, 457 N.Y.S.2d 441, 443 N.E.2d 915 (1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). The assistant district attorney nonetheless denied any racial animus, stating that he recalled only two prospective black jurors being excused by the People, and that they had stated they were related to someone accused of a crime. He concluded by declaring: "And I specifically have not tried to systematically exclude any minority from this panel." Defense counsel then identified four black venirepersons who had been stricken by the prosecutor, though he conceded that one of them could not definitely be identified as a minority person. The state trial judge denied the mistrial motion, stating in light of the fact that a total of 17 peremptory challenges were made, he was not convinced the exercise of three or four in respect to black venirepersons indicated a systematic exclusion of blacks from the jury. The jury that heard the case, as noted, convicted petitioner of murder and robbery.

On direct appeal petitioner argued the prosecution's use of its peremptory challenges against the black venirepersons constituted an equal protection violation under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which applies retroactively to cases not yet final on April 30, 1986, the date it was decided. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). The Appellate Division unanimously affirmed petitioner's conviction, ruling that while a *prima facie* case of discrimination had been established under *Batson,* it was sufficiently rebutted by the race-neutral explanation provided by the prosecutor at the time of trial. *See People v. Brown,* 144 A.D.2d 373, 374, 533 N.Y.S.2d 912 (2d Dep't 1988). Leave to appeal was denied. *Peo-*

*ple v. Brown,* 73 N.Y.2d 975, 538 N.E.2d 361 (1989).

Petitioner then filed the instant *habeas* petition in federal district court, renewing his claim that he was denied his right to equal protection under the Fourteenth Amendment as a result of the prosecutor's exclusion of the four black members of the jury venire. The district court found petitioner had established a *prima facie* case of race discrimination and that the prosecutor had not sufficiently explained his use of peremptory challenges in the state court proceedings. Accordingly, it ordered a hearing as to the circumstances surrounding the prosecution's use of its peremptories.

On August 26, 1991 testimony was taken from three witnesses. Patricia Rogers, the prospective juror whose racial identity was the subject of dispute, testified that she considered herself black, though she had often been mistaken for Hispanic or French. She testified that at the time of petitioner's trial she did not have a tan and wore her hair longer and straighter than at the time of the district court hearing. She also admitted that she had disclosed during the 1985 jury selection that she had a relative who had been convicted of a crime.

Assistant District Attorney Daniel J. Cotter, the trial prosecutor, also testified. He denied race was a factor in his discharge of the venirepersons in question, insisting that he was seeking to empanel a jury whose members had prior jury experience and exhibited mature, stable, and intelligent characteristics. Thus, he considered a prospective juror's age, employment, education, family structure, and longevity of residence as important criteria. He stated he also paid particular attention to a prospective juror's dress, demeanor, and ability to respond to directions as indications of suitability for jury service. Although he had no notes of the jury selection proceedings, Cotter remembered that he "paid particular attention to [the black] jurors the day that [defense counsel] made his motion for a mistrial," since it was the only time in 18 years as a prosecutor he had been ac-

cused of excluding jurors on the basis of race.

He went on to offer an explanation for excusing each of the black venirepersons. He testified that Ms. Mayo was one of the first potential jurors called in the first panel. This happenstance made it likely that, if seated, she would be chosen as foreperson. He explained that he excused her because she "was very timid in speaking and responding to the questions of the [j]udge, as well as [counsel]," and he perceived her therefore to be "an individual who would not be able to handle the weight or responsibility of sitting on a murder case as her first criminal jury service." He was particularly concerned that she would not make a satisfactory foreperson as "she was very nervous" and "would [not] be able to communicate well with the [c]ourt." Of the 14 jurors in the first panel, Cotter characterized Ms. Mayo as "probably the weakest."

With respect to Ms. Rogers, the prosecutor reiterated that at the time of trial he did not believe her to be black. In any event, he explained he discharged her because "her demeanor was completely inappropriate for sitting in this particular case," as "[s]he appeared to be very flippant in a lot of her responses to the [c]ourt." Although he could not recall specific responses, he observed that "[s]he didn't appear to be responding to the questions in an appropriately serious fashion," and instead "appeared to be taking jury duty … as a social affair rather than a real serious civic duty." Cotter added that he perceived Ms. Rogers to be "very receptive [to], and almost flirtatious" with defense counsel.

The assistant district attorney remembered another challenged juror, Ms. Robinson, as "middle-aged or approaching middle-aged," wearing a dark-colored dress, employed, and married. His opinion was that "[s]he was certainly not going to be a strong juror," based on his "mental recollection of [her as] being very quiet, sitting back and trying not to draw attention to herself." Cotter also explained that this prospective juror had the same surname as

two potential witnesses, one of whom may have been called as a rebuttal witness to impeach petitioner's anticipated alibi defense. He "did not feel at liberty to discuss further in voir dire … the relationships of these witnesses" to the prosecution's case.

As to the fourth black venireperson, Mr. Dillard, the prosecutor noted he "appeared to display a hostility or contempt for having to be in the courtroom. He was unresponsive or didn't volunteer when asked questions by the [c]ourt or myself. He didn't appear receptive to taking instructions from the court officers as to where to go or where to sit." Cotter believed this prospective juror "was an individual who was not going to participate with 11 others in jury deliberations," based on his tone and demeanor in answering questions.

Marshall Trager, Esq., petitioner's trial counsel, also testified at the district court hearing. He provided the notes he had taken during jury selection in which he transcribed various characteristics of the venire members, though he did not make any notations as to the demeanor of any potential juror. Counsel testified as to what his notes disclosed about the challenged jurors as well as several sworn jurors. When questioned about his impressions of the four black prospective jurors discharged peremptorily by the prosecution, he stated

> Looking at the jurors and considering how they behaved in the courtroom, how they responded, how they were dressed, they were relatively unremarkable individuals, capable insofar as I am concerned, [of] being fair and impartial.

He admitted that Ms. Rogers was the only juror, sworn or unsworn, whose demeanor he could specifically recall.

After reviewing this testimony, the state trial transcript, and defense counsel's notes of the *voir dire*, the district court found that "through Cotter's testimony … the government has supplied racially neutral reasons for excluding the African–American jurors in question." Noting that "because this was the first time in his career that he had been accused of striking jurors

because of their race, Cotter was able to recall the reasons for their removal," the district court credited the assistant district attorney's explanations for his use of the challenges. In denying *habeas* relief it held petitioner failed to sustain his burden of proving that any of the black venirepersons were excused by the prosecutor because of their race.

## DISCUSSION

### A.

Analysis begins with recognition of the unfortunate reality that in our times some measure of prejudice and racism exists however strongly one may wish their total eradication. And when discrimination is practiced within the judicial system by a prosecutor representing the People, it is particularly pernicious because it denies a minority citizen that equal justice the law aims to secure for all citizens. *See Strauder v. West Virginia*, 100 U.S. 303, 308, 25 L.Ed. 664 (1880). Racism is an evil that defeats the objective of the fair administration of justice and undermines the lofty goals of the Constitution. Blackstone observed that the right of a party litigant to a trial by jury of his "equals or peers" had been part of the common law for hundreds of years, dating to the laws of King Ethelred. *See* 3 William Blackstone, Commentaries *349–50. To deny a defendant a jury of his peers for reasons of race therefore also subverts the ancient common law tradition.

For well over a century it has been part of our law that a defendant put on trial before a jury that deliberately excludes members of his race has been denied the equal protection of the law. *See Strauder*, 100 U.S. at 309. It is plain that the exclusion of black citizens from jury service is an evil the 14th Amendment was designed to root out. *See Batson*, 476 U.S. at 85, 106 S.Ct. at 1716–17. Such an evil may not under the constitution be countenanced. It is in this context that we examine the reasons given by the assistant district attorney of Nassau County for striking black venirepersons by the use of peremptory challenges to determine whether petitioner

was thereby denied the equal protection of the law.

### B.

▮▮▮▮ Where a *prima facie* case of racial discrimination in jury selection has been established—an issue not disputed on this appeal—it is incumbent on the prosecutor to articulate "clear and reasonably specific" race-neutral explanations for the exercise of his peremptory challenges against each of the potential jurors in question. *Batson*, 476 U.S. at 97–98 & n. 20, 106 S.Ct. at 1723–25 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)). On the basis of these proffered explanations, the trial court must then determine whether the defendant has sustained his ultimate burden of proving purposeful discrimination. *Id.* 476 U.S. at 98, 106 S.Ct. at 1724. Its decision on the factual question of discriminatory animus, largely based on determinations of credibility, is ordinarily given "great deference" on appeal. *Id.* at 98 n. 21, 106 S.Ct. at 1724; *accord United States v. Ruiz*, 894 F.2d 501, 506 (2d Cir.1990); *United States v. Biaggi*, 853 F.2d 89, 96 (2d Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989).

Petitioner contends in this case the prosecutor's explanations "amounted to little more than the prosecutor's insubstantial and unverifiable impressions" about the courtroom demeanor of the challenged venirepersons and failed as a matter of law sufficiently to justify his exclusion of the four black members of the jury venire. To the extent that petitioner asserts the prosecutor's proffered reasons are insufficient solely because they are based on subjective evaluations of the prospective jurors' demeanor, he is mistaken. *See, e.g., United States v. Sherrills*, 929 F.2d 393, 394–95 (8th Cir.1991) (juror inattentiveness); *Barfield v. Orange County*, 911 F.2d 644, 648 (11th Cir.1990) (hostile facial expressions and body language), *cert. denied*, —— U.S. ——, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991); *United States v. Garrison*, 849 F.2d 103, 106 (4th Cir.) (juror inattentive-

ness), *cert. denied,* 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988).

■ An impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge. The fact that a prosecutor's explanations in the face of a *Batson* inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific to provide a basis upon which to evaluate their legitimacy. Yet, because such after-the-fact rationalizations are susceptible to abuse, a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny. Prosecutors would be well advised—when contemplating striking a juror for reasons of demeanor—to make contemporaneous notes as to the specific behavior on the prospective juror's part that renders such person unsuitable for service on a particular case. *See Sherrills,* 929 F.2d at 395.

■ In the case at hand, the prosecutor provided relatively detailed accounts of his racially neutral concerns with regard to each of the jurors in question at the district court hearing. His explanations went well beyond a general assertion that they would be biased in defendant's favor merely because they were black, *see Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, and offered stronger bases for evaluation by the district court than those upheld in *United States v. Wilson,* 867 F.2d 486, 488 (8th Cir.) (though prosecutor could not offer particular reasons for exercising peremptory challenges, explanation that "generally speaking it is his practice to maximize the number of men on a jury in a case involving 'street' crime" sufficient), *cert. denied,* 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989), and *United States v. Nicholson,* 885 F.2d 481, 482–83 (8th Cir.1989) (though prosecutor could not recall specific reasons for exercising peremptory challenges, presentation of standard set of guidelines to evaluate potential jurors sufficient). *Compare United States v. Horsley,* 864 F.2d 1543, 1546 (11th Cir.1989) (prosecutor's explanation "I just got a feeling about him" insufficient). Thus, we cannot say the rea-

sons given by this prosecutor for striking the black venirepersons were inadequate, as a matter of law, to overcome petitioner's *prima facie* case.

■ Petitioner further contends that under the present circumstances, where the hearing in federal court took place six years after jury selection and the district judge had no opportunity independently to evaluate the demeanor of the subject venirepersons, the *habeas* court was not in a position to make a fair assessment of the assistant district attorney's reasons. As we recognized in *United States v. Alvarado,* 923 F.2d 253, 256 (2d Cir.1991), there are cases where the passage of time may impair a trial court's ability to make a reasoned determination of the prosecutor's state of mind when the jury was selected. Where such demonstrably exists, there must be a new trial. *See id.; United States v. Alcantar,* 897 F.2d 436, 438–39 (9th Cir.1990). Nonetheless, a federal court reviewing a *habeas* petition will not inevitably be unable to evaluate the prosecutor's intent in exercising his peremptory challenges, despite the absence of contemporaneous evidence, and "if appropriate findings may conveniently be made, this should be done." *Alvarado,* 923 F.2d at 256.

■ Here the district court was not foreclosed from making the necessary determination as to the prosecutor's state of mind. Although Mr. Cotter did not have contemporaneous notes of the *voir dire* process, the district court heard him testify and specifically found he was able to recall his reasons for striking each of the jurors in question because it was the first time in his career he had been accused of racial discrimination in selecting a jury. This testimony provided a proper foundation for the district court to make a credibility ruling with regard to Mr. Cotter's motives in excusing the black venirepersons. *See Hernandez v. New York,* — U.S. —, —, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991) (plurality) ("There will seldom be much evidence bearing on [the issue of discriminatory intent], and the best evidence often will

be the demeanor of the attorney who exercises the challenge.").

The trial court's ability to assess the prosecutor's purpose was enhanced by defense counsel's testimony at the hearing and his contemporaneous notes of the *voir dire* process. In the absence of any evidence casting doubt on the district court's ability to make the required finding as to the prosecutor's intent, we must accord its credibility determination the substantial deference to which it is entitled. In sum, it was not clearly erroneous for Judge Mishler to find the prosecutor's exercise of four peremptory challenges was founded on legitimate factors.

## CONCLUSION

Accordingly, the order of the district court denying the application for a writ of *habeas corpus* is affirmed.