Robert C. WALKER, Petitioner–
Appellant,

v.

Roy A. GIRDICH, Superintendent of
Franklin Correctional Facility,
Respondent–Appellee.

Docket No. 03–2645.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 3, 2005.

Decided: June 8, 2005.

Monica R. Jacobson, Alvy & Jacobson,
New York, N.Y. for Petitioner–Appellant.

Thomas M. Ross, Assistant District Attorney (Charles Hynes, District Attorney for Kings County, Leonard Joblove, Anthea H. Bruffee, Assistant District Attorneys, on the brief), Brooklyn, N.Y. for Respondent–Appellee.

Before: JACOBS and CALABRESI, Circuit Judges, and RAKOFF,[1] District Judge.

JACOBS, Circuit Judge.

■ Petitioner–Appellant Robert C. Walker appeals from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*), rejecting Walker's *Batson* challenge to the alleged exclusion of African–Americans from the jury in his state trial and denying on that basis Walker's petition for habeas relief pursuant to 28 U.S.C. § 2254. A *Batson* motion is assessed in three steps: (1) Has the movant made a prima facie case that the right of peremptory challenge has been exercised in a discriminatory manner? (2) Has the party exercising the challenge given a race-neutral reason for it? (3) Has the movant established "purposeful discrimination"? *Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Here, there is an insufficient record to show whether Walker, an African–American, established a prima facie case of discrimination. However, the prosecutor's stated reason for exercising her thirteenth peremptory challenge against a potential African–American juror was not race-neutral. We therefore reverse the district court's denial of habeas relief and remand to the district court with instructions to grant a writ of habeas corpus directing Walker's release from custody unless Walker is retried in state court within 90 days of the date of the writ.

**I**

Walker was indicted in Kings County on charges relating to the sale of controlled substances. During the fourth round of jury selection before Justice Louis J. Marrero, after the prosecutor struck an African–American juror on the prosecutor's thirteenth peremptory challenge, defense counsel raised her first *Batson* objection:

> Your Honor, at this time I am making a Batson challenge. I believe that the People have exercised at this point— that was their thirteenth peremept. Of the thirteenth [sic] perempts, twelve have been Black. This has been a very racially mixed panel. I believe the People are exercising their challenge in a racially discriminatory manner. Twelve of the thirteen challenges have been Black. One has been White . . . .

In response, the prosecutor argued (and the trial judge observed) that five of the nine seated jurors were African–American. On that ground, the court concluded that defense counsel could not establish a discriminatory "pattern." However, since the prospective juror in question, Bernard Jones, was still available to be seated (unlike those stricken in the previous jury selection rounds), the court invited the prosecutor to state her objection "[j]ust for the record." In response, the prosecutor observed that Mr. Jones "had a problem with every single question that was asked," "gave one word answers," and was concerned about missing work, but focused upon Mr. Jones's race in framing her "main . . . problem" with his service:

> Okay, *one of the main things I had a problem with was that this is an individual who was a Black man with no*

1. The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

*kids and no family.* He said he was not married. He had no family and in fact he had absolutely no experience whatsoever with police officers. He also stated after one of the questions was raised about whether or not—I believe it was if we proved our case, he goes, yeah, well only if it is convincing. That is what he had stated. I also noted, and you could look at my notes which were not written at any time after we withdrew this juror, was felt he had an attitude .... An attitude against a prosecutor is certainly a basis to remove that person.

(emphasis added).

The trial court ruled that defendant had not established a prima facie case of discrimination as required by *Batson:*

I don't find that there is a pattern .... I have been watching it carefully and I don't get the sense and I have been listening to the questions and I have been listening to the answers and based upon that I get the sense, I have a sense of why they challenged some people; and I don't believe it is on a racial basis. So your application is denied. I don't think there is a prima facie showing.

In rejecting a renewed *Batson* application by the defense, the trial judge noted for the record that during the fourth round of jury selection, the prosecutor challenged two African–Americans and two non-African-Americans. At the end of the fourth round, twelve jurors and three alternate jurors were selected—the third alternate juror, selected by consent, was Mr. Jones.[2]

Following trial, the jury convicted Walker of various charges and the court sentenced Walker to concurrent terms of imprisonment of six to twelve years on each count. The Appellate Division affirmed the conviction, concluding that Walker's *Batson* claim was "without merit." *People*

*v. Walker,* 276 A.D.2d 651, 652, 714 N.Y.S.2d 515 (2d Dep't 2000). The New York Court of Appeals denied leave to appeal. *People v. Walker,* 95 N.Y.2d 970, 722 N.Y.S.2d 488, 745 N.E.2d 409 (2000).

Walker sought habeas relief in March 2001, arguing, *inter alia,* that the trial court's determination that defendant failed to establish a prima facie case of discrimination was contrary to or an unreasonable application of clearly established Supreme Court precedent. The district court concluded that habeas relief on Walker's *Batson* claim was "not warranted," but nevertheless granted a certificate of appealability on that issue.

## II

■ "We review the district court's factual determinations for clear error and its denial of the writ de novo." *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005) (citing *Jenkins v. Artuz,* 294 F.3d 284, 290 (2d Cir.2002)). Under 28 U.S.C. 2254(d), a habeas court may grant the writ "with respect to any claim that was adjudicated on the merits in State court" only if "the adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*DeBerry,* 403 F.3d at 66 (quoting 28 U.S.C. § 2254(d)). Citing *Batson* and its progeny, Walker argues that the trial court unreasonably applied clearly established Supreme Court precedent in ruling that

---

**2.** Mr. Jones did not deliberate.

Walker failed to establish a prima facie case of discrimination.

■ *Batson* established that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant," and prescribed a three-part test for whether the prosecution exercised its peremptory challenge in a racially biased manner: (1) the defendant must make a prima facie case that the prosecution exercised its peremptory challenge in a discriminatory manner; (2) once the defendant establishes its prima facie case, the prosecution must assert a race-neutral reason for the challenge; and (3) the trial court must then determine whether the defendant has established "purposeful discrimination." 476 U.S. at 96–98, 106 S.Ct. 1712.

■ The record is insufficient to determine whether the prosecutor's use of twelve of her thirteen peremptory challenges against African–Americans in a trial of an African–American is sufficient to create a prima facie case. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712. We are at a disadvantage because we cannot tell the racial composition of the venire, notwithstanding that defense counsel described the panel as "very racially mixed." Nevertheless, under *Batson* and its progeny, striking even a single juror for a discriminatory

purpose is unconstitutional[3]; so the *Batson* objection to the striking of Bernard Jones is a valid one. *Cf. Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

It is helpful in a *Batson* case to have a record as to the composition of the venire and the race and ethnicity of jurors struck on either side. Moreover the allocation of the burden for creating a record as to the prima facie case is unsettled; so it would be prudent for counsel to preserve a full opportunity for appeal by making a record for appeal.

However, we need not decide the allocation of burden in this case because the explanation offered by the prosecutor for her challenge of the individual juror was not race neutral:

> [H]e had a problem with every single question that was asked. He gave one word answers . . . . Okay, one *of the main things I had a problem with was that this is an individual who was a Black man with no kids and no family.* He said he was not married. He had no family and in fact he had absolutely no experience whatsoever with police officers . . . . I felt he had an attitude . . . .

Thus, "[o]ne of the main" grounds troubling the prosecutor was Mr. Jones's race (seemingly aggravated by his being a bachelor). Some of the other explanations—*e.g.*, that Mr. Jones gave "one word" answers or "had an attitude"—tend

---

**3.** *See Batson*, 476 U.S. at 95, 106 S.Ct. 1712 ("[A] consistent pattern of official racial discrimination is not a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions.") (internal quotation marks omitted); *see also United States v. Vasquez–Lopez*, 22 F.3d 900, 902 (9th Cir.1994) ("To establish a prima facie case, [the habeas petitioner] did not need to show that the prosecution had engaged in a pattern of dis-

criminatory strikes against more than one prospective juror. We have held that the Constitution forbids striking even a single prospective juror for a discriminatory purpose."); *Jones v. Ryan*, 987 F.2d 960, 972 (3d Cir.1993) (holding that "'the exclusion of even a single venireperson on the basis of race is a violation of the Equal Protection Clause. This circuit has also held that the exclusion of even one juror on the basis of race may be sufficient to establish a *prima facie* case.") (internal citation omitted).

to reinforce rather than dispel a race-based motive. The juror's lack of experience with the police would militate in *favor* of keeping him on the panel.

The State argues that the prosecutor's statements that Mr. Jones "was Black" and that he had "no family" were merely descriptive. However, the prosecutor's words and phrasing adduce these characteristics as grounds for the peremptory challenge rather than as incidental description or as a predicate for inferring some permissible ground for excusing the juror. The challenge was therefore improper.

In view of the prosecutor's comments, the trial court's rejection of Walker's *Batson* challenge "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1). We therefore reverse the district court's denial of habeas relief and remand to the district court with instructions to grant a writ of habeas corpus directing Walker's release from custody unless Walker is retried in state court within 90 days of the date of the writ.