**David GREEN, Petitioner–Appellant,**

v.

**Brion D. TRAVIS, Chairman, New York State Division of Parole, Eliot L. Spitzer, Attorney General of the State of New York, Respondents–Appellees.**

**Docket No. 04–0426–PR.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 22, 2004.

Decided: July 7, 2005.

David G. Kleinman, Arnold & Porter, LLP New York, N.Y. (David Crow, Crimi-

nal Appeals Bureau, The Legal Aid Society, New York, New York, of counsel), for petitioner-appellant.

Michael Tarbutton, Assistant District Attorney, Queens County, New York (Richard A. Brown, District Attorney, Queens County, New York, John M. Castellano, Assistant District Attorney, of counsel), for respondents-appellees.

Before: JACOBS, SOTOMAYOR and HALL, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Petitioner David Green ("petitioner") appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We hold that our review of Green's claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is not barred by procedural default; that the Appellate Division unreasonably determined the facts concerning petitioner's *Batson* challenge; that reconstruction of the prosecutor's non-discriminatory reasons for peremptorily challenging certain minority jurors was possible; and that Green failed to establish his *Batson* claim by a preponderance of the evidence. Accordingly, we affirm the district court's denial of Green's petition for a writ of habeas corpus.

## BACKGROUND

On July 15, 1998, petitioner David Green was arrested in Jamaica, New York, after selling cocaine to an undercover police officer. He was subsequently charged with criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39[1] and criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law § 220.03.

Green was tried in Supreme Court, Queens County. The jury was chosen using the "jury box" system, with peremptory challenges exercised in "rounds." The *voir dire* consisted of three rounds with each side entitled to a total of fifteen peremptory challenges and to two additional peremptory challenges for each alternate juror. The number of persons in the venire and the racial and ethnic composition of the venire were not preserved in the record.

During the first round of jury selection, the prosecution exercised three peremptory challenges to excuse one Black man, one Black woman, and one Hispanic woman. The defense excused an Asian woman. No minority jurors remained after the for-cause and peremptory strikes. During the second round of jury selection, the State exercised two peremptory challenges to excuse one Black man and one Hispanic woman from the venire. At this point, defense counsel objected:

[Defense Counsel]: Judge, you [sic] I'm going to make a challenge.

The Court: Go ahead.

[Defense Counsel]: I don't know how the Court likes to proceed on this—

The Court: According to the *Batson* case law.

[Defense Counsel]: Correct. You ready?

The Court: Yeah.

[Defense Counsel]: Okay. The jury back on the first round, the People have peremptor[ily] challenge[d], in total juror 2, black female juror, number 6, Hispanic female juror, 14, black male. They've now challenged in the second round, juror number 7, Mr. Johnson, a male black. And they have challenged juror, I believe—

The Court: 9.

[Defense Counsel]:—Elizabeth Morales, female Hispanic. While they are—certainly, they involve different genders and different Hispanic race and the

black race, they are—I believe that the People are discriminating on race which is absolutely forbidden to be done.

I think that a prior [sic] case of discrimination in their preliminary challenges has been made out. By these choices.

The Court: Finished?

[Defense Counsel]: Yes.

[Prosecutor]: Judge, I don't believe defense counsel has made a viable argument that—because I have reason to respond, I don't think he's reached the level to show that the pattern of anything here.

[The Court]: *Batson* challenge is denied. Defense did not establish as a [prima] facie case pursuant to the case law, other than referring to certain racial groups, as I say, the requirements as to the prime [sic] facie case that must be laid out, have not been laid out by counsel. So the application is denied.

All right. The People are not required to come forth with any race neutral reasons for those challenges based on the record made by defense.

After the denial of the *Batson* challenge, the prosecution used a peremptory challenge to strike a woman of unspecified race. At the conclusion of the second round, eight jurors were sworn. At the conclusion of the third round, a jury of fourteen (including two alternates) was sworn that included three minorities: one Black woman, one Hispanic woman and one Hispanic man.

On January 26, 1999, the jury convicted Green of all charges. On February 17, 1999, the trial court sentenced Green to an indeterminate term of imprisonment of four-and-a-half to nine years for the crimi-

nal sale of the controlled substance and a concurrent one-year term of imprisonment for the criminal possession of a controlled substance.

On April 30, 2001, the Appellate Division affirmed the judgment of conviction. *People v. Greene*, 282 A.D.2d 757, 758, 724 N.Y.S.2d 344 (2d Dep't 2001).[1] The Appellate Division held, in relevant part, that:

[t]he defendant's *Batson* claim ... is unpreserved for appellate review (*see* CPL 470.05[2] ). In any event, the defendant failed to establish a prima facie case that the prosecutor's peremptory challenges were employed for discriminatory purposes because "minorities" in general do not constitute a cognizable racial group.

*Id.* at 758, 724 N.Y.S.2d 344. On August 16, 2001, the New York Court of Appeals denied leave to appeal. *People v. Greene*, 96 N.Y.2d 918, 732 N.Y.S.2d 635, 758 N.E.2d 661 (2001) (Levine, J.).

On November 13, 2002, Green, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York (Weinstein, J.). The petition claimed that the prosecution's discriminatory use of peremptory challenges during *voir dire* violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

On November 4, 2003, the district court found that Green had established a *prima facie* case of discrimination at trial and that Green's defense counsel had properly preserved his *Batson* claim. On November 12, 2003, the district court conducted a reconstruction hearing to determine whether the prosecutor had legitimate reasons to use her peremptory strikes.

---

**1.** The Appellate Division spelled the petitioner's surname differently from the spelling of petitioner's surname provided to us.

Eileen Daly, the trial prosecutor, testified at the hearing that before reviewing the trial transcript and her notes from the trial, she had little to no independent recollection of the characteristics or comments of any of the venirepersons at petitioner's trial. Daly's recollection principally consisted of memories that Green's case was a drug-related matter; that Green wore purple and green clothes at the time of his arrest; and that the crime scene was a bodega adjoining an open lot.

Nevertheless, relying on her notes from *voir dire,* her review of the trial transcript and a discussion of her customary juror selection practices, Daly testified that she used her first peremptory challenge to strike a Black woman because (1) the venireperson's husband had been arrested and prosecuted for drugs in Queens County; (2) the venireperson had indicated she would not try to convince her fellow jurors during deliberations; (3) the venireperson had failed to state definitively that she would feel comfortable sharing her views during deliberations; and (4) the venireperson had not clearly expressed her views on whether police officers are more or less likely to lie than are other witnesses.

Daly stated that she used her second peremptory challenge to strike a Hispanic woman because that woman had a family member who had been arrested on a drug offense, and because Daly believed that the woman had difficulty following her questions. Furthermore, upon questioning by the prosecutor regarding the relevance of paperwork errors to the case, Daly testified that she was concerned about this venireperson's perspective on inadequate paperwork because the woman, a nurse, had expressed the belief that paperwork errors in the healthcare setting could cause deaths.

Daly explained that she used her third peremptory challenge to strike a Black man because he had a family member who had been arrested and mistreated by the police and because he expressed hesitation in convicting on the basis of only one witness's testimony.

With respect to the second round of *voir dire,* Daly testified that she struck a Black man because he was a recovering drug addict whose past interactions with the police had annoyed him; he indicated that he might be able to identify with the defendant; and he generally appeared confused.

Unlike her testimony with respect to the other four venirepersons, Daly's testimony with respect to the fifth venireperson she had challenged was based solely on her review of the trial transcript. When asked by the court how the venireperson would judge a person's credibility, the venireperson responded, "evidence." Daly testified that, based on the woman's subsequent description of how she went about determining whether her son was lying to her, she believed she struck the woman because of her perception that the woman would have problems in assessing witness credibility.

On December 2, 2003, the district court denied Green's petition for habeas corpus. The court found that the Appellate Division's holding that Black and Hispanic venirepersons do not constitute a "cognizable racial group" was an unreasonable application of *Batson.* It further found that Green had established a *prima facie* showing of discriminatory intent by the prosecutor's use of peremptory challenges. The court then determined that a reconstruction hearing was feasible and that the prosecutor was a credible witness whose notes supported her testimony. The court concluded that Green had not established by a preponderance of the evidence that the peremptory challenges were exercised based on race or ethnicity as to separate

groups of Blacks or Hispanics or as to single group of minority jurors. Although the court denied Green's habeas petition, it issued a certificate of appealability "in light of the inherent difficulty of reconstruction of the *Batson* hearing and the unresolved issue in this Circuit of combining minority groups for purposes of such a challenge."

This appeal followed.

## DISCUSSION

### I. Procedural Default

 A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id.* at 750, 111 S.Ct. 2546. In particular, a state court procedural default will bar habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996) (citations and internal quotation marks omitted). Moreover, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Glenn*, 98 F.3d at 724 (internal quotation marks omitted). Thus, even when a state court says that a claim is "not preserved for appellate review" but then rules "in any event" on the merits,

such a claim is procedurally defaulted. *Id.* at 725.

 The State argues that the Appellate Division's ruling that Green's claim was unpreserved for appellate review under N.Y.C.P.L. § 470.05(2) constitutes an "adequate and independent" state law ground that precludes our review of Green's habeas claim. Under § 470.05(2), an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review. *People v. Jones*, 81 A.D.2d 22, 29, 440 N.Y.S.2d 248 (2d Dep't 1981) (explaining that "the doctrine [of preservation of error] is perhaps more properly conceived as a method of 'procedural default', whereby the failure to raise a timely claim of error—whether the omission be intentional or inadvertent—consigns the objection to permanent repose"); *see also People v. Luperon*, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 647 N.E.2d 1243 (1995) (stating that "the basic rules of preservation" per N.Y.C.P.L. § 470.05(2) "require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave [the trial court] the opportunity to remedy the problem and thereby avert reversible error"); *People v. Robinson*, 36 N.Y.2d 224, 228, 367 N.Y.S.2d 208, 326 N.E.2d 784 (1975) (holding that defendant's "failure to object to the [jury] charge . . . or to request further clarifications at a time when the error complained of could readily have been corrected preserved no questions of law reviewable" by the higher court).

Under N.Y.C.P.L. § 470.05(2), an objection to a ruling or instruction of a criminal court must also be made with sufficient specificity to enable the trial court to re-

spond. *See, e.g., People v. Rodriguez,* 262 A.D.2d 428, 428, 693 N.Y.S.2d 54 (2d Dep't 1999) (holding that defendant's claim that his conviction was not proven by legally sufficient evidence was unpreserved for appellate review under § 470.05(2) on account of defendant's failure to advance the claim "with specificity" before the trial court when he moved to dismiss the indictment); *People v. McLane,* 256 A.D.2d 10, 10–11, 682 N.Y.S.2d 24 (1st Dep't 1998) (holding that defendant who "fail[ed] to elaborate on the basis for his objection to the court's charge on justification ... failed to provide the court with a fair opportunity to rectify any error and failed to preserve the issue for appellate review" under § 470.05(2)). New York courts have held that these principles govern the preservation of *Batson* claims. *See People v. Jones,* 284 A.D.2d 46, 48, 728 N.Y.S.2d 417 (1st Dep't 2001) (holding that pursuant to § 470.05(2), "[a]n objector is not allowed to either interpose a vague *Batson* objection or forego making a particularized objection to a juror only to later pursue a reformulated, belatedly specific claim on appeal" (citations omitted)); *People v. Barber,* 156 A.D.2d 1022, 1022, 549 N.Y.S.2d 313 (4th Dep't 1989) (holding that "[d]efendant's objection to the exercise of peremptory challenges against two prospective black jurors was untimely because the objection was made after all of the jurors, including the alternates, were sworn").

In the instant case, Green's counsel explicitly challenged the prosecution's peremptory strikes under *Batson,* alleging "that the People are discriminating on race" by striking only Hispanic and Black venirepersons during the first two rounds of juror selection.[2] In denying the *Batson* challenge, the trial court held that "[d]efense [counsel] did not establish ... a prim[a] facie case." The Appellate Division held, citing § 470.05(2), that Green had not preserved his *Batson* challenge but failed to explain the basis for this conclusion. The Appellate Division's holding that Green failed to preserve his *Batson* challenge under § C.P.L. 470.05(2) cannot be based on a lack of timely objection because defense counsel promptly objected at the end of the second round of jury selection when the pattern of strikes became evident. Rather, the Appellate Division's holding must have been premised on the view that defense counsel failed to preserve his *Batson* challenge because he failed to formulate the *Batson* challenge with the requisite specificity. The State now advances this reading of the Appellate Division's decision, contending that Green's *Batson* challenge is procedurally barred on account of its vagueness.

The question of whether an objection is sufficiently specific to constitute a *prima facie* case under *Batson,* however, merges the preservation issue with the adequacy of a *prima facie* case under *Batson.* Thus, if the Appellate Division held

2. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court established a tripartite burden-shifting evidentiary framework for determining whether a peremptory challenge is improperly motivated by race:

> First, the moving party-[that is,] the party challenging the other party's attempted peremptory strike—must make a *prima facie* case that the nonmoving party's peremptory is based on race. Second, the nonmoving party must assert a race-neutral reason for

> the peremptory challenge. The nonmoving party's burden at step two is very low.... [A]lthough a race-neutral reason must be given, it need not be persuasive or even plausible. Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race.

*McKinney v. Artuz,* 326 F.3d 87, 97–98 (2d Cir.2003) (internal citations omitted).

(as the State argues) that Green's *Batson* claim was unpreserved because it did not satisfy the test for a *prima facie Batson* claim, the state's procedural default rule is interwoven with federal constitutional law. The procedural rule is therefore not independent of federal law. When a state procedural ruling does not rest on an "independent" state ground, habeas review is not foreclosed. *DeBerry v. Portuondo*, 403 F.3d 57, 64 (2d Cir.2005) ("Where a [state court] decision 'fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion,' habeas courts presume that there is no adequate and independent state law ground supporting the judgment." (quoting *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546 (alteration in original))). Because the Appellate Division's application of § 470.05(2) turned upon the interpretation of federal constitutional jurisprudence on jury selection, we find that no "independent" state procedural law ground forecloses our review of Green's *Batson* claim.

## II. Review of the Appellate Division's Ruling under § 2254(d)

■ Having determined that Green did not procedurally default his *Batson* challenge, we apply the standards of review contained in 28 U.S.C. § 2254 as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104–132, 110 Stat. 1214, which provides, in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254. "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Although the State argues for affirmance of the district court's denial of Green's petition for a writ of habeas corpus, the State simultaneously urges us to reject the district court's conclusion that "the Appellate Division's holding that Black and Hispanic jurors do not constitute a 'cognizable racial group' is an unreasonable application of *Batson v. Kentucky* " within the meaning of § 2254(d)(1). In particular, the State contends that Blacks and Hispanics cannot be combined to constitute a "cognizable racial group" because doing so would run afoul of Supreme Court precedent defining "cognizable racial group."

■ We reject the State's analysis of the term "cognizable racial group" in *Batson* jurisprudence. *Batson* established that "[t]he Equal Protection Clause guarantees the [criminal] defendant that the State will not exclude members of his race from the jury venire on account of race." 476 U.S. at 86, 106 S.Ct. 1712. In turn, *Batson* held that a defendant seeking to establish a *prima facie* case of discrimination in the peremptory exercise of petit jury strikes "first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremp-

tory challenges *to remove from the venire members of the defendant's race." Id.* at 96, 106 S.Ct. 1712 (internal citations omitted) (emphasis added). The Supreme Court's subsequent decision in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), dramatically lessened the import of *Batson*'s "cognizable racial group" language, however, by holding that a criminal defendant has third-party standing to raise the equal protection claims of venirepersons who have been peremptorily excluded from a petit jury on account of purposeful racial discrimination, even if the defendant and the peremptorily excluded venirepersons were not of the same race.[3] *Id.* at 415–16, 111 S.Ct. 1364; *see also Overton v. Newton,* 295 F.3d 270, 276 n. 7 (2d Cir.2002). Moreover, *Powers* established that the racially discriminatory peremptory challenge of one juror, standing alone, violates the Equal Protection Clause. *See Powers,* 499 U.S. at 409, 111 S.Ct. 1364 ("An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right

not to be excluded from one on account of race."); *Walker v. Girdich,* 410 F.3d 120, 123 (2d Cir.2005) (stating that "under *Batson* and its progeny, striking even a single juror for a discriminatory purpose is unconstitutional"). The applicability of *Powers'* declaration that "a member of the community may not be excluded from jury service on account of his or her race," *id.* at 407, 111 S.Ct. 1364, is not limited to those situations in which purposeful racial discrimination targets only a single venireperson for peremptory exclusion from a jury but extends to those contexts in which any and all venirepersons face peremptory exclusion from a jury on account of intentional racial bias.[4]

■■■■ Contrary to the State's suggestion, a defendant raising a *Batson* claim of purposeful racial discrimination does not have to demonstrate that all venirepersons who were peremptorily excused belong to the *same* "cognizable racial group." *Powers* makes clear that the only continuing

---

3. The *Powers* Court noted that:

 [t]he emphasis in *Batson* on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today that race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges. Racial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred. But to say that the race of the defendant may be relevant to discerning bias in some cases does not mean that it will be a factor in others, for race prejudice stems from various causes and may manifest itself in different forms. ·
 *Id.* at 416, 111 S.Ct. 1364.

4. Subsequent Supreme Court cases have applied the logic of *Powers* to expand the consti-

tutional protections against purposeful racial discrimination in the jury selection process. *See, e.g., Campbell v. Louisiana,* 523 U.S. 392, 398, 400, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (applying *Powers* to hold that white defendant has third-party standing ·under Equal Protection Clause to challenge exclusion of Blacks from grand jury); *Georgia v. McCollum,* 505 U.S. 42, 55–56, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (applying *Batson* and *Powers* to hold that Equal Protection Clause prohibits criminal defendant from engaging in intentional racial discrimination in exercise of peremptory challenges and that state has third-party standing to raise claims of excluded venirepersons); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 616, 628–31, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying *Powers* to hold that Equal Protection Clause prohibits private litigant in civil case from engaging in intentional racial discrimination in the exercise of peremptory challenges and that opposing private litigant has third-party standing to raise claims of excluded venirepersons).

relevance of *Batson's* "cognizable racial group" language is the requirement that a defendant alleging purposeful racial discrimination in the exercise of peremptory strikes must demonstrate that a peremptorily excused venireperson was challenged by reason of being a member of *some* "cognizable racial group." *Cf. Batson,* 476 U.S. at 97–98, 106 S.Ct. 1712 ("The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race."). It is indisputable that one venireperson cannot be excluded from a jury on account of race. *A fortiori,* several venirepersons of different races cannot be excluded from a jury on account of race.[5]

▪ While upholding the rationale of the district court's analysis under § 2254(d), we also examine the state court's holding. The Appellate Division held that "the defendant failed to establish a prima facie case [under *Batson* ] that the prosecutor's peremptory challenges were employed for discriminatory purposes because 'minorities' in general do not constitute a cognizable racial group." This statement, however, was premised on an "unreasonable determination of the facts" under § 2254(d)(2) in light of the evidence presented at Green's trial.[6] Green's trial counsel never objected to the peremptory exclusion of "minorities," but only objected to the striking of both Black and Hispanic jurors. The precise objections of Green's trial counsel were not tangential to the adjudication of Green's *Batson* claim, but central to it. In this respect, the Appellate Division's mistaken analysis of the basis of Green's *Batson* claim distinguishes this case from those situations in which a state court's misunderstanding of the facts of a case had little bearing on the state court's ultimate resolution of the claim. *Cf. DelValle v. Armstrong,* 306 F.3d 1197, 1201 (2d Cir.2002) (affirming denial of habeas relief under § 2254(d)(2) in spite of the state court's misstatement of the facts of the case because the state court's misapprehension of the facts was irrelevant to the disposition of the case). The Appellate Division's incorrect analysis of the facts

5. Although our Circuit has not explicitly held that a *prima facie Batson* claim may be raised to protest the peremptory exclusion of venirepersons from more than one racial group, we have previously permitted such challenges to proceed. In *United States v. Alvarado,* 923 F.2d 253 (2d Cir.1991), we found that a criminal defendant challenging the prosecution's peremptory exclusion of Black and Hispanic venirepersons had established a *prima facie* case of discrimination under *Batson. Id.* at 254–56. *See also Burks v. Borg,* 27 F.3d 1424, 1426–27 (9th Cir.1994) (recognizing State's concession that defendant established *prima facie Batson* claim challenging peremptory exclusion of Blacks and Hispanics from venire); *United States v. Guerra–Marez,* 928 F.2d 665, 673 (5th Cir.1991) (holding that prosecution's non-discriminatory rationales for peremptorily excluding Blacks and Hispanics from venire were "adequate to overcome the *Batson* presumption" of prejudice); *United States v. Moreno,* 878 F.2d 817, 820–21 (5th

Cir.1989) (affirming district court's findings that prosecution's proffered nondiscriminatory reasons for striking Black and Hispanic venirepersons were not pretextual).

6. Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." This Court has not yet addressed whether a petitioner seeking habeas relief must prevail under both § 2254(d)(2) and § 2254(e)(1). *See Channer v. Brooks,* 320 F.3d 188, 194 (2d Cir.2003) (per curiam). The *Channer* Court assumed without deciding that "satisfaction of either inquiry would be sufficient." *Id.* We need not resolve the issue left open by the *Channer* Court because Green easily rebuts the presumption of correctness established in § 2254(e)(1).

constituting the heart of Green's *Batson* claim means that its holding cannot withstand our scrutiny under § 2254(d)(2). *Cf. Parsad v. Greiner*, 337 F.3d 175, 182 (2d Cir.2003) (stating that Appellate Division's conclusion that petitioner was not "in custody" of police officers while being interrogated by them was "unreasonable and not entitled to deference pursuant to 28 U.S.C. § 2254(d)(2), because the majority failed to consider whether petitioner was placed in custody by virtue of the detectives' seizure of his [blood-stained] pants").

■ In addition, although the Appellate Division did not address whether the pattern of the prosecution's peremptory strikes established a *prima facie* case of discrimination under *Batson*, we find that it did. At the time of the *Batson* challenge, the prosecutor had used one hundred percent of her peremptory strikes to remove Black and Hispanic jurors. Sixty percent of the prosecution's peremptory challenges were used to exclude Blacks while the remaining forty percent of the prosecution's peremptory challenges were used to exclude Hispanics. Furthermore, at the time of the *Batson* challenge, the prosecution had stricken all of the Black members of the jury pool not already struck for cause. The *Batson* Court itself noted that a pattern of strikes can constitute a *prima facie* case. *See Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712 ("In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination."); *see also Harris v. Kuhlmann*, 346 F.3d 330, 345–47 (2d Cir.2003) (holding that prosecutor's use of peremptory strikes to exclude all Black venirepersons established *prima facie Batson* case); *Tankleff v. Senkowski*, 135 F.3d 235, 249

(2d Cir.1998) ("[T]he fact that the government tried to strike the only three blacks who were on the [venire] panel constitutes a sufficiently dramatic pattern of actions to make out a prima facie case.").

## III. The Prosecution's Rebuttal of Green's *Batson* Claim and Green's Response

■ Having concluded that the Appellate Division committed error in adjudicating Green's *Batson* claim, the district court had several remedial options: it could have "1) h[e]ld a reconstruction hearing [to] take evidence regarding the circumstances surrounding the prosecutor's use of the peremptory challenges to the ... excluded [venirepersons]; 2) return[ed] the case to the state trial court on a conditional writ of habeas corpus so that the state court could conduct the inquiry on its own; or 3) order[ed] a new trial." *Harris*, 346 F.3d at 347 (citations and internal quotation marks omitted). In the instant case, the district court held a reconstruction hearing to determine whether the prosecutor had legitimate nondiscriminatory reasons for striking minority venirepersons and ultimately determined that she did. Green argues that the district court could not successfully reconstruct the prosecutor's motives for striking the five minority venirepersons because the prosecutor did not have an independent memory of her justification for exercising peremptory strikes. As such, he argues that he should be granted a writ of habeas corpus absent a new trial.

We recognize that, in the instant case, the prosecutor had little specific recall of the jury selection in the case, unlike the prosecutor in *Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir.1992) (upholding reconstruction when prosecutor could provide from memory "relatively detailed accounts of his racially neutral" justifications for peremptory strikes over six years after

jury selection) or in *Bryant v. Speckard*, 131 F.3d 1076, 1078 (2d Cir.1997) (per curiam) (upholding reconstruction when prosecutor remembered voir dire over six years after jury selection and was subject to cross-examination by defendant). Nor did the prosecutor place her reasons on the trial record, in contrast to the prosecutor in *Jordan v. Lefevre*, 293 F.3d 587, 594 (2d Cir.2002) (upholding reconstruction because prosecutor had recollection of case, made notes during *voir dire* and had supplied contemporaneous explanations in the record).

Nevertheless, the district court did not abuse its discretion when it permitted the reconstruction hearing and relied upon the testimony offered at that hearing to reconstruct the prosecutor's reasons. *See Harris*, 346 F.3d at 348 (holding that we review for abuse of discretion the decision of a habeas court to hold a hearing after the fact to determine whether prosecutor exercised peremptory strikes in a racially discriminatory manner (citing *Tankleff*, 135 F.3d at 250)). We have previously stated that a prosecutor's general practice and approach to jury selection may furnish race-neutral justifications for peremptory strikes. *See, e.g., Jordan*, 293 F.3d at 594–95 (noting that prosecutor's race-neutral explanation for peremptory strikes against Black venirepersons were supported by "the court's ability to assess [the prosecutor's] demeanor as he testified to his general philosophy of jury selection," as well as the fact that case had no apparent racial overtones; that two Blacks were seated on jury even though prosecutor could have peremptorily challenged them; and that district court was entitled to credit prosecution's belief that certain peremptorily excluded Black venirepersons lacked necessary impartiality or maturity to serve on jury).

▮ Moreover, the unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge. *See, e.g., McCrory v. Henderson*, 82 F.3d 1243, 1247–48 (2d Cir. 1996) (noting that peremptory challenges "may legitimately be based not only on answers given by the prospective juror to questions posed on *voir dire*, but also on the prosecutor's observations of the prospective juror"); *Brown*, 973 F.2d at 121 ("An impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge."). Similarly, a juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge. *See, e.g., United States v. Rudas*, 905 F.2d 38, 40–41 (2d Cir.1990) (upholding prosecution's peremptory challenge of Hispanic venireperson, who expressed belief that police officer had once used excessive force against him, because it gave prosecution "a basis for believing that [the venireperson] might be prejudiced against law enforcement officers and thus not be an impartial juror").

▮ The race-neutral explanations provided by Daly for her peremptory strikes all relied on the types of evidence that this Court has approved in support of establishing the racial neutrality of a peremptory challenge. First, like the *Jordan* prosecutor, Daly had notes from the *voir dire*, upon which she relied to explain the strikes of four out of five jurors. Moreover, Daly testified to her general practice in exercising peremptory strikes during *voir dire*. For example, she testified that in narcotics cases she avoided selecting jurors who had family members who had either been arrested or undergone negative experiences with the police. She also avoided selecting jurors who had personal or family experience with narcotics, harbored negative feelings about the police, expressed reluctance to convict on the basis of one witness' testimony (because drug prosecutions often depend on the testimo-

ny of one witness), or expressed a belief that drug use was socially acceptable. She also strove to select jurors who could understand evidence, follow trial proceedings, and participate in jury deliberations. Daly's proffered race-neutral explanation for striking the fifth venireperson also appears to have been derived from her general principles of jury selection. *Cf. Brown,* 973 F.2d at 121 ("[A] federal court reviewing a *habeas* petition will not inevi-· tably be unable to evaluate the prosecutor's intent in exercising his peremptory challenges, despite the absence of contemporaneous evidence, and if appropriate findings may conveniently be made, this should be done." (citation and internal quotation marks omitted)).

Accordingly, the district court did not clearly err in concluding that Daly's explanations easily satisfied step two of the *Batson* analysis. *See Jordan,* 293 F.3d at 594 (holding that once reconstruction has been determined to be feasible, reviewing court accords deference to reconstructing court's credibility assessments and may not set aside district court's findings of fact unless they are "clearly erroneous"). Daly's race-neutral reasons for exercising peremptory challenges ·handily satisfied this test because her proffered justifications were race-neutral, clear, and not otherwise vague or facially· questionable. *Cf. Batson,* 476 U.S. at 98, 106 S.Ct. 1712 (holding that in articulating race-neutral justifications for exercising peremptory strikes, the prosecutor may not simply deny "that he had a discriminatory motive" or affirm his "good faith" in selecting jurors, but rather must "articulate a neutral explanation related to the particular case to be tried"); *Kelly,* 973 F.2d at 120 (stating that once defendant has established *prima facie* case of racial discrimination, "it is incumbent on the prosecutor to articulate 'clear and reasonably specific' race-neutral explanations for the exercise of his peremptory challenges against each of the

potential jurors in question") (citing *Batson,* 476 U.S. at 97–98 & n. 20, 106 S.Ct. 1712 (further internal quotations omitted)); *see also United States v. Thomas,* 320 F.3d 315, 320 (2d Cir.2003) (holding that prosecutor defending *Batson* challenge is "not required, when challenged, to persuade the court that its race-neutral reasons for striking jurors are valid or tactically sound; it is enough that they are the government's reasons"); *Barnes v. Anderson,* 202 F.3d 150, 156 (2d Cir.1999) (" 'The second step of this process does not demand an explanation that is persuasive, or even plausible.... [T]he issue is the facial validity of the [non-movant]'s explanation. Unless a discriminatory intent is inherent in the [non-movant]'s explanation, the reason offered will be deemed race neutral." ' (quoting *Purkett v.· Elem,* 514 U.S. ˙765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (further internal quotation marks omitted)) (alterations in original)).

Finally, it was not clearly erroneous for the district court to find that Green failed to establish by a preponderance of the evidence that intentional racial discrimination motivated the prosecution's peremptory challenges. Green has offered no evidence to undermine the persuasiveness of the prosecutor's justifications or to demonstrate that the district court's stage-three *Batson* finding was "clearly erroneous." Thus, we affirm the district court's denial of Green's habeas petition on the ground that the district court's credibility determination was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Green's petition for a writ of habeas corpus.