Willie DUNN, Petitioner,

v.

Lawrence F. SEARS, Respondent.

No. 06 CV 4757 (VM).

United States District Court,
S.D. New York.

June 18, 2008.

Illie Dunn, Malone, NY, Pro Se.

Frederick Hongyee Wen, Attorney General of the State of New York, New York, NY, for Respondent.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

### I. INTRODUCTION

Pro se petitioner Willie Dunn ("Dunn") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). Dunn was convicted in New York State Supreme Court, New York County (the "Trial Court"), of two counts of grand larceny in the third

degree in violation of New York Penal Law ("NYPL") § 155.35; two counts of grand larceny in the fourth degree in violation of NYPL § 155.30(1); attempted grand larceny in the fourth degree in violation of NYPL §§ 110.00 and 155.30(1); and criminal possession of a forged instrument in the second degree in violation of NYPL § 170.25 (collectively, the "Offenses"). Dunn was sentenced to imprisonment for an indeterminate aggregate term of nine to eighteen years. In his petition, Dunn asserts the following grounds as bases for habeas relief: denial of his due process right to a fair trial by reason of (1) the Trial Court's failure to order a hearing regarding whether the prosecutor provided Dunn with a reasonable opportunity to appear before the grand jury, and (2) prosecutorial misconduct on summation because the prosecutor: a) harshly denigrated the defense; b) repeatedly referred to evidence outside the four corners of the trial evidence; c) shifted the burden of proof; and d) made inappropriate comments about the exercise of Dunn's constitutional rights. For the reasons stated below, Dunn's petition is DENIED.

### II. BACKGROUND

#### A. FACTS AND PROCEDURAL HISTORY[1]

##### 1. The Offenses

Dunn was convicted on four separate larceny charges arising from incidents on August 26 and 29, and September 3 and 8,

---

**1.** The factual summary below is derived from the Trial Transcript (Supreme Court of New York, Part 39, May 27, 2003) ("Trial Tr.") in *People v. Dunn*, Indictment # 7115–02 (November 20, 2002), and the Sentencing Transcript (Supreme Court of New York, Part 39, June 19, 2003) ("Sentencing Tr."); and from submissions of the parties to this Court, as well as their earlier submissions to the state courts, namely: Brief for the Defendant–Appellant, dated June 2004 ("Def.'s Br."); Brief for Respondent, dated November 2004 ("Resp't's Br."); Dunn's Habeas Corpus Petition, dated May 23, 2006 ("Pet."); Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated July 3, 2007 ("Resp't's Dec."); and Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated July 3, 2007 ("Resp't's Mem."). Except where specifically quoted, no further reference to these documents will be made.

2002, in addition to convictions for attempted grand larceny and criminal possession of a forged instrument on September 14, 2002.

### a. *Grand Larceny on August 26, 2002*

On August 26, 2002, the Office Depot at 521 Fifth Avenue in Manhattan ("Office Depot I"), received an order for a laptop computer, costing $1,699.99, which was placed through an Office Depot call center. The order specified the authorized purchaser as Art Quimby[2] for Dow Jones & Company ("Dow Jones"). At approximately 8:00 a.m., Dunn came to Office Depot I, and, after the store manager legitimated the order by phone, signed for the package, produced identification,[3] and picked up the order.

### b. *Grand Larceny on August 29, 2002*

On August 29, 2002, Office Depot I received a fax order, purportedly on behalf of Dow Jones, for two laptop computers totaling $3,199.98, which was billed to Dow Jones and signed by a person purporting to be Quimby. Dunn later came to the store and picked up the computers.

### c. *Grand Larceny on September 3, 2002*

On September 3, 2002, Office Depot I received an order from its call center placed by Willie Dunn purportedly on behalf of Dow Jones for two laptop computers totaling $2,749.98. As surveillance cameras captured his movements, Dunn arrived at Office Depot I at approximately 2:00 p.m., signed for and picked up the computers.

### d. *Grand Larceny on September 7–8, 2002*

On September 7, 2002, Dunn arrived at the CompUSA store at 57th Street and Broadway in Manhattan (the "CompUSA Store") to pick up an order for two laptop computers valued at $5,199.94, purportedly on behalf of Dow Jones (the "September 7th Order"). Dunn stated that he was a messenger sent by Quimby, but Dunn could not produce sufficient identification. The CompUSA Store denied Dunn's request to pick up the computers because he lacked identification.

On September 8, 2002, Yarila Gonzales ("Gonzales"), the cashier at the CompUSA Store, received a call from a person who purported to be Quimby (the "Caller"). The Caller asked to speak with a manager concerning the September 7th Order. Gonzales informed the Caller that she would need to speak with her manager regarding the Caller's concerns. The Caller refused to give his phone number to Gonzales because the Caller claimed he was driving and could not be reached. Later that day, Dunn came to the CompUSA Store to pick up the September 7th Order, and he brought with him a copy of a purchase order containing Quimby's name and phone number. However, when asked for photographic identification, Dunn could produce only Medicaid and Social Security cards. A CompUSA manager called Dow Jones to speak with

---

**2.** Art Quimby ("Quimby"), the only technical purchasing manager at Dow Jones, testified at trial that he did not place any of the computer orders attributed to him in this case, and that he never ordered laptop computers from Office Depot. Quimby also testified that he had bought computer equipment from CompUSA only one time, which occurred six or seven years ago, and that he did not place the September 7–8, 2002, CompUSA order. Furthermore, Quimby stated that he never hired or authorized Dunn to pick up or purchase the laptop computers. (*See* Trial Tr. at 743–59.)

**3.** Dunn produced a New York benefit workers healthcare card with the name "Willie Dunn." (*See* Def.'s Br. at 13.)

Quimby, but Quimby was unavailable to take the manager's call at that time. A CompUSA manager eventually approved the computers' release. Dunn signed the invoice and left with the computers.

### e. *Dunn's Arrest*

On September 13, 2002, Billy Green ("Green"), the customer services supervisor for Office Depot's Business Services Division in Atlanta, Georgia, received a phone call from a customer purporting to be Quimby (the "Customer"). The Customer was upset because he was unable to order laptops on a Dow Jones corporate account. Green determined that the account had been purged because of fraudulent activity, but he approved the order to appease a corporate client. Green noticed that there was unusual activity on the account[4] and decided to tell the Customer that Office Depot needed time to locate a store with the desired computers. The Customer refused to provide Green with his telephone number.

Green then telephoned Michael Shannon ("Shannon"), Office Depot's northeast regional loss prevention manager, who instructed Green to send the order to an Office Depot store located at 1441 Broadway, Manhattan ("Office Depot II"), which had a surveillance camera. Eventually, Green faxed an invoice to the fax number provided by the Customer/ which was a Kinko's store located in Manhattan.

On September 14, 2002, Shannon went to Office Depot II to speak with Timothy O'Donnell ("O'Donnell"), the assistant manager, and Shannon directed him to stall anyone who came in to pick up the computers while Shannon called the police. Dunn arrived at the store at about 2:30 p.m. and asked to pick up the laptops for Dow Jones. O'Donnell asked for photo identification, but Dunn provided only a copy of the invoice while Shannon called the police. O'Donnell attempted to stall Dunn longer by telling him that the computers were shipped to the wrong store, but Dunn left because he said he "lost his car." (Trial Tr. at 422.) Police arrived shortly thereafter, and Shannon signed a police report describing the incident.

At approximately 4:15 p.m., O'Donnell received a phone call from a man identifying himself as Detective Holden from the Midtown South Precinct ("Detective Holden"), who stated he was investigating a theft ring, and O'Donnell gave Detective Holden Shannon's telephone number. After speaking with Detective Holden, Shannon noticed that the man had a southern accent and found it suspicious that Detective Holden could not remember his precinct number. Later that day, Shannon received another phone call from the man identifying himself as Detective Holden, and the man requested that Office Depot release the laptops to Dunn so that undercover officers could follow Dunn. Shannon then called the Midtown South Precinct and spoke with Detective Anthony Czak ("Det. Czak"), who informed Shannon that there was no Detective Holden in that precinct.

O'Donnell received another phone call from the man identifying himself as Detective Holden, and the man said that he was stationing detectives outside the store and if Dunn came in, O'Donnell should give the computers to Dunn and allow Dunn to leave. O'Donnell subsequently received another call from the man purporting to be Detective Holden, who was upset that Dunn had approached the store and walked away. O'Donnell subsequently received another call from the man identify-

---

**4.** Green noticed that previous orders had been designated to be picked up rather than to be shipped.

ing himself as Detective Holden and was told that Dunn was close by and the computers should be ready to be released. Det. Czak went to the sales floor, where he witnessed O'Donnell hand Dunn a computer valued at $1,549.99, and Det. Czak apprehended Dunn within the store.

Det. Czak searched Dunn and recovered numerous papers, including Green's phone number and extension, as well as a credit card receipt and a slip for the laptop computer order, both dated September 13, 2002. The receipt was for an order placed at Majestic Deli, located at 200 West 50th Street in Manhattan, for $64.85, which contained David Shalom's ("Shalom") credit card number and signature. Shalom stated that he had never been to the Majestic Deli and that the signature was not his.

### 2. Grand Jury Hearing

On September 15, 2002, during Dunn's arraignment, he served written notice of his intention to testify before the grand jury (the "Grand Jury") on October 29, 2002. The prosecutor (the "Prosecutor" or the "State") required that, prior to testifying before the Grand Jury, Dunn sign a full waiver of immunity, but Dunn signed the grand jury waiver only as to incidents arising from this case. The Prosecutor refused to accept the document, unless Dunn signed a full waiver of immunity, and the judge presiding over the Grand Jury (the "Grand Jury Judge") ruled that Dunn could not qualify his waiver. The Prosecutor contends that for Dunn to testify before the Grand Jury, he merely needed to sign a full waiver of immunity. Dunn counters that, although he intended to testify even after he refused to sign the immunity waiver, he was never presented the opportunity to testify before the Grand Jury. The Grand Jury Judge never ordered a hearing regarding these competing factual allegations.

### 3. The Summation

During Dunn's summation, he argued that, throughout the trial, the State had not proven that he "conned" Office Depot and CompUSA. (*Id.* at 996–97.) Dunn asserted that evidence of his guilt was lacking and that the police investigation was insufficient. Dunn also argued that, when picking up the computers, he never identified himself as being associated with Dow Jones, and that if the computer sales at issue were illegal, then Office Depot and CompUSA should have used the verification tools at their disposal and prevented completion of the sales.

During the State's summation, over sustained objections, the Prosecutor repeatedly referred to Dunn's defense as a "con." The Trial Court stated on the record that, "[it] would prefer if [the State] didn't discuss [Dunn's] con," but instead, "[d]iscuss what the evidence is and why the evidence supports [the State's] position." (*Id.* at 1027.) The Prosecutor also referred to Dunn as a "prolific and skillful con artist," and that the State was "here to prevent [the jurors] from becoming [Dunn's] newest victims." (*Id.* at 1028.)

Dunn also objected to certain comments the Prosecutor made on summation as being outside of the trial evidence. In explaining to the jury how the alleged fraud worked, the Prosecutor stated that Dunn would call Dow Jones asking the name of its purchasing manager. The Trial Court sustained Dunn's objection, because such comments were not supported by the evidence. The Prosecutor then stated that "[Dunn] was able to get the information that he needed to place the computer orders and then, he would make phone calls saying that he would like to place a computer order." (*Id.* at 1029). The Trial Court overruled Dunn's objection to this statement, noting that there was "evidence that there were phone numbers" and "evi-

dence that phone calls were made," and "it's for the jury to determine whether they believe that the evidence shows that." (*Id.*)

Dunn also objected to the Prosecutor's argument on summation that Dunn had "intimate knowledge of the company operations," based on his ability to ask questions to the witnesses that "show[ed] an intimate knowledge to those organizations." (*Id.* at 1035–36). The Trial Court sustained Dunn's objection to this comment because although the comment "shows a present intimate knowledge, it may not [show] a knowledge at [the time of the crimes]." (*Id.* at 1036.)

The court overruled Dunn's objection to the Prosecutor's statement on summation that the "crimes stopped when [Dunn] was arrested," because that statement was supported by the evidence. (*Id.* at 1053–54.)

Dunn also objected to certain comments made by the Prosecutor that Dunn contended shifted the burden of proof. These comments included Dunn's failure to ask witnesses "if they recognized [Dunn's] voice," and the Prosecutor's reference to Dunn's failure to offer any evidence that Dunn was going "to see his car" when he left Office Depot II on September 14, 2002. (*Id.* at 1036–41, 1058–59.)

Finally, Dunn claimed that the Prosecutor committed misconduct when it commented on Dunn's exercise of his constitutional rights, namely his right to confront the witnesses against him and his right to proceed pro se. The Prosecutor referred to Dunn's courtroom demeanor and cross-examination questions, noting the similarity in temperament among Dunn, the man purporting to be Quimby, and Detective Holden, and that Dunn's questions to witnesses showed "an intimate knowledge" of the companies that were defrauded. (*Id.* at 1035–41.)

### 4. *Verdict and Appeal*

The jury convicted Dunn of the Offenses, and the Trial Court sentenced Dunn to an indeterminate aggregate term of nine to eighteen years. Dunn appealed his conviction to the New York State Supreme Court, Appellate Division, First Department (the "Appellate Division").

Appellate counsel for Dunn argued that the Trial Court committed reversible error when it denied Dunn his due process right to a fair trial because of prosecutorial misconduct during summation, namely that the Prosecutor: (a) harshly denigrated the defense by referring to defense's closing arguments as more attempts at frauds and deception ("Denigration Challenge"); (b) repeatedly referred to matters not in evidence by stating, among other things, that Dunn was able to obtain the necessary information for placing the computer orders, that Dunn initiated the phone calls placing the orders, and that the crimes stopped after Dunn was arrested ("Evidence Challenge"); (c) shifted the burden of proof by commenting on Dunn's failure to question any of the witnesses on whether "they recognized his voice" ("Burden Challenge"), (Trial Tr. at 1041); and (d) made inappropriate comments about Dunn's exercise of his constitutional rights ("Commentary Challenge") (collectively, the "Challenges"). Dunn's Appellate counsel also argued that the Trial Court erred when it failed to order a hearing to determine whether the State provided Dunn a reasonable opportunity to appear before the Grand Jury ("Grand Jury Argument").

On January 11, 2005, the Appellate Division unanimously affirmed Dunn's conviction. *See People v. Dunn,* 14 A.D.3d 364, 787 N.Y.S.2d 317 (App. Div. 1st Dep't 2005). The Appellate Division found that the Prosecutor's summation did not deprive Dunn of a fair trial because the remarks challenged as straying from the

record "constituted efforts to draw reasonable inferences from the evidence," and the remarks purportedly denigrating the defense on summation were "within the bounds of permissible rhetoric." *Id.* at 318. The Appellate Division found that Dunn "failed to preserve his [two] other challenges to the summation," and "decline [d] to review them in the interest of justice." *Id.* The Appellate Division also stated that if the other challenges were reviewed, they would be unavailing because those challenged remarks were harmless. *See id.* Finally, the Appellate Division found that Dunn received a reasonable opportunity to testify at his grand jury hearing because he "attempted to place meritless conditions on his waiver of immunity" when he "knew or should reasonably have known that he was not entitled to limit his waiver of immunity to the crimes charged in the felony complaint." *Id.*

Dunn, through counsel, filed an application for leave to appeal to the New York Court of Appeals (the "Court of Appeals"). (*See* Application for Leave to Appeal of Jonathan M. Kirshbaum, dated January 18, 2005 (the "Kirshbaum Application"), attached as Ex. D to Resp't's Dec.) By letter filed on February 8, 2005, with the Court of Appeals, Dunn renewed three of the Challenges presented to the Appellate Division, namely the Grand Jury Argument, the Denigration Challenge and the Evidence Challenge, and included copies of the briefs filed with the Appellate Division. (Kirshbaum Application, attached as Ex. D. to Resp't's Dec.) On February 25, 2005, the Court of Appeals denied Dunn leave to appeal. *See People v. Dunn*, 4 N.Y.3d 798, 795 N.Y.S.2d 173, 828 N.E.2d 89 (N.Y. 2005).

## B. *TIMELINESS*

Under 28 U.S.C. § 2244(d)(1), a one-year limitation period applies to the filing of petitions by state prisoners seeking federal habeas corpus review. This period runs from the date on which a petitioner's conviction becomes final on direct review, or the expiration of time to seek appeal. *See Id.*

In the instant case, Dunn's limitation period began running on May 26, 2005, the date his time expired to seek a writ of certiorari to the United States Supreme Court challenging the ruling of the Court of Appeals affirming his conviction, rendering Dunn's conviction final. Lawrence F. Sears ("Respondent") has not disputed the timeliness of Dunn's habeas petition, which was filed on May 23, 2006, within the one-year limitation period.

## III. *DISCUSSION*

### A. *LEGAL STANDARDS FOR HABEAS RELIEF*

#### 1. *Exhaustion*

■ As a starting point, the Court notes that Dunn is a pro se litigant. As such, his submissions must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted). The Court must read Dunn's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation omitted).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution, federal law, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Before seeking federal relief, however, a petitioner must exhaust all available state court remedies. *See* 28 U.S.C. § 2254(b)-(c). This standard generally requires that

the petitioner "fairly present" his claims to the highest available state court, "setting forth all of the factual and legal allegations he asserts in his federal petition." *Daye v. Attorney Gen.,* 696 F.2d 186, 191–92 (2d Cir.1982) (internal citations omitted).

All of Dunn's habeas claims are exhausted. Each claim was raised in the Appellate Division "in terms so particular as to call to mind a specific right protected by the Constitution." *Id.* at 194. Dunn later sought leave to appeal the rejection of his claims to the New York Court of Appeals, the highest available state court, thereby exhausting his state court remedies on each of these claims.

### 2. *Independent and Adequate State Grounds*

A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on state procedural grounds. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). A state court adjudicates a petitioner's federal claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). A claim resolved on the merits is finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311; *see also Castillo v. Walsh,* 443 F.Supp.2d 557, 562 (S.D.N.Y. 2006).

To succeed on habeas, the petitioner must show that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or ... [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005). A decision is contrary to Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]" or "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." *Williams v. Taylor,* 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision involves an unreasonable application of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. An unreasonable application is not simply an incorrect application, but "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (*quoting Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000)). However, the state court decision need not be "so off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S.,* 221 F.3d at 111.

A claim resolved on independent and adequate state procedural grounds is generally not subject to review on habeas. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). There are limited circumstances where a federal court may conduct a habeas review of claims resolved on state grounds. Federal review is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime charged, *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002); (2) cause for the procedural default resulting

in prejudice, *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); or (3) that the procedural bar that the state court applied is not adequate, *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir.2003).

█ Dunn has not asserted actual innocence, and he has not attempted to provide cause for any default. This situation leaves only the question of the adequacy of the applicable state procedural rule. Grounds to determine the adequacy of a state procedural bar are: (1) whether the alleged procedural violation was actually relied on in the state court, and whether compliance with the state rule would have changed the state court's decision ("Adequacy Factor I"); (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented ("Adequacy Factor II"); and (3) whether the petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest ("Adequacy Factor III") (collectively, the "Adequacy Factors"). *See Cotto*, 331 F.3d at 240.

## B. *APPLICATION TO DUNN'S CLAIMS*

### 1. *Failure to Conduct a Hearing Regarding Dunn Testifying Before the Grand Jury*

Dunn asserts that his due process rights were violated when the Grand Jury Judge failed to order a hearing to determine whether the prosecutor provided Dunn with a reasonable opportunity to appear before the grand jury. The Grand Jury Argument is dismissed because it is noncognizable on federal habeas review.

█ The state's failure to use certain procedures, such as to hold a hearing, violates due process "if [the procedure] offend[ ] some principle of justice so rooted

in the traditions and conscience of our people as to be ranked as fundamental." *Hines v. Miller*, 318 F.3d 157, 161–62 (2d Cir.2003). It is well-settled, however, that federal habeas review is available only for federal constitutional violations. *See, e.g.*, 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). It is equally well-settled that there is no federal constitutional right to a grand jury in a state criminal prosecution. *See Alexander v. Louisiana*, 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir.1990) (stating that the Fifth Amendment right to indictment by a grand jury is not incorporated by the Due Process Clause of the Fourteenth Amendment and does not apply to the states). Grand jury claims are, therefore, not cognizable on federal habeas review after a guilty verdict. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (stating that a jury conviction transforms any grand jury defect into harmless error because the trial conviction established not only probable cause to indict, but also proof of guilt beyond a reasonable doubt); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989).

Federal courts have consistently held that the right to appear before the grand jury is not reviewable by a federal habeas court. *See, e.g.*, *Dixon v. McGinnis*, 492 F.Supp.2d 343, 347 (S.D.N.Y.2007) (stating that because the law that guarantees a criminal defendant's right to testify before the grand jury is embodied in a New York state statute, citing C.P.L. § 190.50(5)(a), and not the United States Constitution, a petitioner's claim that he was deprived of his right to testify before the grand jury "cannot stand as a ground for federal habeas relief"); *Moore v. Warden*, 380 F.Supp.2d 321, 328 (S.D.N.Y.2005) (stating that "claims of deficiencies in state grand jury proceedings, where rendered harm-

less by a petit jury, are not cognizable in a habeas corpus proceeding in federal court").

Accordingly, Dunn's Grand Jury Argument is dismissed as non-cognizable on federal habeas review.

### 2. *Prosecutorial Misconduct*

Dunn challenged the Trial Court's conviction on the grounds that the Prosecutor committed misconduct on summation by reason of the conduct underlying the Denigration Challenge, the Evidence Challenge, the Burden Challenge, and the Commentary Challenge. Dunn raised his objection to the Denigration Challenge and the Evidence Challenge in the Trial Court but failed to preserve the Burden Challenge and Commentary Challenge. *See Dunn,* 787 N.Y.S.2d at 318.

### a. *The Burden Challenge and the Commentary Challenge are Unpreserved*

■ The Appellate Division found that Dunn did not sufficiently preserve his right to challenge the Prosecutor's conduct that underlies the Burden Challenge and the Commentary Challenge. A determination that a claim is unpreserved is a sufficient indication that the state court denied the claim based on state procedural grounds. *See Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005). Although the Appellate Division additionally found Dunn's claims "unavailing," an alternative ruling on the merits does not remove the procedural bar created by the independent and adequate state ruling. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Green,* 414 F.3d at 294. Therefore, the Appellate Division's determination that Dunn's objections to the Prosecutor's conduct underlying the Burden Challenge and the Commentary Challenge were unpreserved reflected a reliance on an independent state procedural rule in declining to review these claims, despite the alternative ruling on the mer-

its. *See Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038.

The record is unclear as to the grounds upon which the Appellate Division relied in determining that the objections to the Prosecutor's conduct underlying the Burden Challenge and Commentary Challenge were unpreserved, but it is likely that the Appellate Division was convinced by Respondent's argument that New York's contemporaneous objection rule, C.P.L. § 470.05(2), barred Dunn's claims because a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. *See, e.g., People v. Hardy,* 4 N.Y.3d 192, 791 N.Y.S.2d 513, 517 n. 3, 824 N.E.2d 953 (2005); *People v. Gray,* 86 N.Y.2d 10, 629 N.Y.S.2d 173, 175, 652 N.E.2d 919 (1995). The Second Circuit recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. *See, e.g., Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007).

Through the Adequacy Factors, the Second Circuit has set forth a framework for determining whether a state procedural bar is adequate. *See Cotto,* 331 F.3d at 240. Here, the Adequacy Factors weigh in favor of finding that the Trial Court's application of the preservation rule was an adequate procedural bar. As to Adequacy Factor I, Dunn never specifically objected in the Trial Court to the Prosecutor's purported shifting of the burden of proof or that the Prosecutor commented on Dunn's exercise of his constitutional rights, and, therefore, the Trial Court never had sufficient opportunity to rule on the Prosecutor's conduct in this regard. Dunn made only one-word objections to the Prosecutor's conduct underlying the Burden Challenge and the Commentary Challenge. (*See* Trial Tr. at 1027–28, 1036–41, 1053–59, 1081–82.)

As to Adequacy Factor II, New York State caselaw is consistent with this result in this case. *See, e.g., People v. Tonge,* 93 N.Y.2d 838, 688 N.Y.S.2d 88, 710 N.E.2d 653 (1999) (noting that failure to specify the basis for a general objection to a remark on summation leaves the argument unpreserved); *People v. Rodriguez,* 49 A.D.3d 433, 853 N.Y.S.2d 351, 352 (App. Div. 1st Dep't 2008) (dismissing prosecutorial misconduct complaint as unpreserved because, though defendant generally objected to prosecutor's summation during the trial, defendant failed to specifically object); *see also People v. Green,* 46 A.D.3d 324, 847 N.Y.S.2d 190, 191 (App. Div. 1st Dep't 2007).

As to Adequacy Factor III, Dunn made no effort to substantially comply with New York's contemporaneous objection rule because the rule requires only that he make a specific objection to the Prosecutor's conduct underlying the Burden Challenge and the Commentary Challenge, yet Dunn made no such specific objections to those comments. Thus, the Adequacy Factors weigh in favor of finding that New York's contemporaneous objection rule was adequately applied to the Prosecutor's conduct underlying the Burden and Commentary Challenges. Accordingly, the Appellate Division resolved Dunn's claims regarding the Burden and Commentary Challenges on independent and adequate state procedural grounds.

b. *The Challenges are Meritless*

 Even assuming, however, that all of Dunn's Challenges were properly preserved, the Court would still deny each of them as meritless. It is well-settled that the propriety of comments made by a prosecutor on summation generally does not present a federal constitutional violation. *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991). Dunn's claims that the conduct underlying the Challenges violated the Constitution can succeed only if he can demonstrate that the Prosecutor's conduct "so infected the trial with unfairness as to make the conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *see United States v. Elias,* 285 F.3d 183, 190 (2d Cir.2002). Prosecutorial misconduct for comments made in summation is grounds for reversal only when the remarks caused "actual prejudice" by infecting the trial with unfairness. *See Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998). Prejudice cannot be demonstrated in the absence of evidence of prosecutorial misconduct. *See id.*

i. *Denigration Challenge*

 Dunn's claim that the Prosecutor denigrated his defense is denied because the Prosecutor was merely responding to Dunn's comments on his summation, namely that the Prosecutor had failed to prove that Dunn was guilty of the Offenses.

Dunn's two themes throughout his summation were: (1) that he was an innocent messenger sent to pick up the computers; and (2) that the evidence was manufactured because the Prosecutor had failed to investigate properly. (Trial Tr. at 996–1026.) Dunn indicated that the Prosecutor was missing the "bacon" because of the Prosecutor's inability to prove that Dunn "conned these lap top computers." (*Id.* at 997.) In response, the Prosecutor opened his summation by referring to Dunn's defense as "Dunn's newest con." (*Id.* at 1027.)

Viewed in light of Dunn's summation, the Prosecutor's remarks, including calling petitioner a "prolific and skillful con artist" and warning the jurors not to "be conned as [Dunn's] newest victims," were not inap-

propriate because they were invited by Dunn's summation and the Prosecutor was making a fair argument of the evidence. (Trial Tr. at 1027–28, 1084); *see Darden,* 477 U.S. at 182–83, 106 S.Ct. 2464; *United States v. Rivera,* 22 F.3d 430, 437 (2d Cir.1994). Furthermore, the Second Circuit has upheld a conviction despite isolated comments by the prosecutor that the defense was an "insult" to the victim and a tactic of desperation. *Elias,* 285 F.3d at 190; *see also Valdez v. Mazzuca,* No. 00 Civ. 4961, 2002 WL 1364089, at *2–3 (E.D.N.Y. June 21, 2002) (holding that comments that petitioner was "making this up ... as you go along," asking whether petitioner has just told a "story," and whether petitioner's testimony was a mockery, insulting to the jury's intelligence, were harmless in light of the overwhelming evidence).

Because the Prosecutor responded to Dunn's summation and did not prejudice the jury in light of the overwhelming evidence supporting Dunn's conviction, Dunn's Denigration Challenge is denied.

### ii. *Evidence Challenge*

■ Dunn's Evidence Challenge is denied as meritless. Dunn concedes that "the People had the right to argue that the jury could make certain inferences," but nonetheless goes on to challenge the inferences drawn by the Prosecutor during summation. (Pet. at 6(C).) The Second Circuit has held that "it is improper for a prosecutor to mischaracterize the evidence or refer in summation to facts not in evidence." *United States v. Rosa,* 17 F.3d 1531, 1548–49 (2d Cir.1994). A prosecutor does not commit misconduct if he merely presents "one view of the evidence, which the jury could accept or reject based on its own knowledge and judgment of the entire record." *United States v. Hawkins,* 125 Fed.Appx. 364, 366 (2d Cir.2005).

During the Prosecutor's summation, the Prosecutor repeatedly referred to Dunn as the perpetrator of the crimes for which he was on trial. Dunn repeatedly objected and, in some instances, the Trial Court sustained those objections. As the Trial Court noted, because there was evidence associating Dunn with phone numbers and that the phone calls were made, the Prosecutor could make fair arguments to the jury about whether Dunn made those calls. The Trial Court also found that, because there was evidence that the crimes stopped when Dunn was arrested, the Prosecutor was fairly commenting on the evidence. For the most part, the Prosecutor made reasonable inferences. However, if any of the Prosecutor's comments were improper, such comments were brief and isolated and were not repeated after a sustained objection. Thus, the severity of the Prosecutor's misconduct on summation, if any, was "mitigated by the brevity and fleeting nature of the improper comments." *Tankleff,* 135 F.3d at 253. Accordingly, the Evidence Challenge is denied.

### iii. *Burden Challenge*

The Burden Challenge is denied as meritless. Comments regarding a petitioner's refusal to testify may implicate his Fifth and Sixth Amendment rights, *see Griffin v. California,* 380 U.S. 609, 613–14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and comments regarding the defense's failure of proof can be constitutionally suspect. *See Hardison v. Artus,* No. 06 Civ. 0322, 2006 WL 1330064, at *11 (S.D.N.Y. May 16, 2006).

On summation, the Prosecutor commented that Detective Holden had a southern accent, just like Dunn, and that it was no coincidence that Dunn "never asked any of those witnesses if they recognized his voice" (the "Recognition Comment"). (Tri-

al Tr. at 1036–41.) The Prosecutor also referenced the lack of evidence that Dunn was going "to see his car" (the "Car Comment"). (*Id.* at 1058–59.)

The Recognition and Car Comments were proper on summation and did not shift the burden of proof. These comments were a direct response to Dunn's summation argument mocking "Detective Ho[lden]" as the "detective who is not a detective," when he had asked the jurors if they "got that whole line of what that was about." (Trial Tr. at 1022.) Because the Prosecutor was responding to Dunn's argument, the Recognition and Car Comments were proper. *See, e.g., Rivera,* 22 F.3d at 438 (stating that the "government is allowed to respond to argument that impugns its integrity or the integrity of its case"); *Mackey v. McGinnis,* No. 05 Civ. 4899, 2006 WL 2290829, at *10–11 (S.D.N.Y. Aug. 9, 2006) (stating that a prosecutor's summation comments were proper, and did not shift the burden of proof, because they directly responded to defense counsel's arguments).

To the extent, if any, that the Prosecutor's Car and/or Recognition Comments shifted the burden of proof, any harm was "mitigated by the brevity and fleeting nature of the improper comments." *Tankleff,* 135 F.3d at 253. Accordingly, the Burden Challenge is denied.

### iv. *Commentary Challenge*

The Commentary Challenge is denied as meritless. As the Court previously stated, comments made at trial by prosecutors regarding refusal to testify may implicate the petitioner's Fifth and Sixth Amendment rights. *See Griffin,* 380 U.S. at 613–14, 85 S.Ct. 1229.

With the Commentary Challenge, the Prosecutor's comments did not implicate Dunn's Fifth or Sixth Amendment rights. The Prosecutor's statements were simply fair argument on the evidence and rebuttal to Dunn's summation comments. *See Darden,* 477 U.S. at 182–83, 106 S.Ct. 2464; *Rivera,* 22 F.3d at 437. During Dunn's summation, he questioned the Prosecutor's alleged failure to investigate and lack of evidence, particularly with respect to Detective Holden, and argued that the large corporate victims were "capable of taking care of themselves" and should have taken action to end the harm. (Trial Tr. at 1002, 1025–26.) Accordingly, because the Prosecutor's comments underlying the Commentary Challenge were directly addressing Dunn's remarks on summation, the Commentary Challenge is denied.

### c. *Any Alleged Prosecutorial Misconduct was Harmless*

██ Even if the conduct underlying the Challenges was improper, the Challenges should still be denied as harmless. As mentioned above, prosecutorial misconduct for summation is grounds for reversal only when the remarks caused "actual prejudice" by infecting the trial with unfairness. *See Tankleff,* 135 F.3d at 252. In determining whether the prosecutor's comments cause prejudice, the court considers three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." *United States v. Thomas,* 377 F.3d 232, 245 (2d Cir.2004) (*citing United States v. Evangelista,* 122 F.3d 112, 120 (2d Cir.1997)).

In this case, the alleged improper statements by the Prosecutor that linked Dunn to the crime did not amount to severe misconduct. *Cf. United States v. Thomas,* 377 F.3d at 246 (noting that the use of the word "lied" more than once on summation, in connection with the defendant, does not constitute severe misconduct). Also, because of the Trial Court's issuance of a remedial jury instruction, any prosecutori-

al misconduct was sufficiently cured. *See, e.g., Weeks v. Angelone,* 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) ("A jury is presumed to follow its instructions"); *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (stating that federal courts operate under the assumption that the jury will follow a trial court's limiting instruction). The Trial Court instructed the jury that "each [juror] is the sole and exclusive judge of the facts," and each juror is "to determine the facts solely on the bases of this evidence." (Trial Tr. at 1087, 1088.) The Trial Court also instructed the jury "to disregard any testimony of witness' stricken from the record," and that "[t]he burden of proof never shifts to the defendant." (*Id.* at 1089, 1095.) Therefore, even if the conduct underlying the Challenges was improper, the Trial Court adequately remedied the impropriety by issuing appropriate limiting instructions. *See, e.g., Lebron v. Girdich,* No. 03 Civ. 2765, 2003 WL 22888809, at *3 (S.D.N.Y. Dec. 5, 2003) (finding the prosecutor's comments during summation regarding petitioner's decision not to testify did not shift the burden of proof to petitioner, and in any event, the court's jury instruction regarding the prosecutor's burden of proof addressed "any point on which [prosecutor's comments] might be found objectionable").

■ Furthermore, any possible prosecutorial misconduct is overshadowed by the overwhelming evidence presented in the Trial Court of Dunn's guilt. If there is clear evidence of guilt, prosecutorial misconduct on summation is considered harmless error. *See Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986). Dunn was identified by numerous witnesses and was arrested while he had one of the computers at issue in his possession and a fraudulent receipt on his person. At the time of arrest, Dunn was also carrying substantial incriminating evidence linking him to the crimes, including receipts, original letters faxed to the stores, fax cover sheets, order forms, and phone numbers of Office Depot and CompUSA employees that a person purporting to be Quimby had previously asked to speak with. Considering the evidence in favor of conviction, even if any of the conduct underlying the Challenges were improper, the determination by the Appellate Division that such conduct was "harmless in light of the overwhelming evidence of [petitioner's] guilt," *Dunn,* 787 N.Y.S.2d at 318, was an objectively reasonable application of the Supreme Court's harmless beyond a reasonable doubt standard pursuant to *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The Supreme Court has held that in order to make a showing of such a harmful deprivation, "the error [must have] had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (*quoting Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The deprivation "must have been 'sufficiently material to provide a basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998) (*quoting Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir. 1992)); *see also Cummings v. Artuz,* 237 F.Supp.2d 475, 486–87 (S.D.N.Y.2002).

Accordingly, because the Appellate Division's harmless error determination was an objectively reasonable application of *Chapman,* and under *Brecht,* any errors did not have a "substantial and injurious effect . . . in determining the jury's verdict," the Challenges are denied.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition dated May 23, 2006 (Docket No. 1) of Petitioner Willie Dunn ("Dunn") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Dunn has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000). The Clerk of the Court is directed to close this case. **SO ORDERED.**