Korey LIGGINS, Petitioner,

v.

John BURGE, Superintendent of
Elmira Correctional Facility,
Respondent.

No. 07 Civ. 2538(VM).

United States District Court,
S.D. New York.

Feb. 11, 2010.

Edward Joseph Joyce, Stillman, Friedman & Shechtman, P.C., New York, NY, for Petitioner.

Deborah L. Morse, New York County District Attorney's Office, New York, NY, for Respondent.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Petitioner Korey Liggins ("Liggins"), who is currently incarcerated at Elmira Correctional Facility in New York ("Elmira"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against John Burge, Superintendent of Elmira ("Respondent"). Liggins was convicted in New York State Supreme Court, New York County (the "Trial Court") of murder in the first degree, in violation of New York Penal Law § 125.27(1), and attempted robbery in the first degree, in violation of New York Penal Law §§ 110.00, 160.15[2]. The Trial Court sentenced Liggins to life imprisonment without parole and a term of fifteen years, each to run concurrently. The Appellate Division, First Department ("Appellate Division"), affirmed the conviction on appeal. The New York Court of Appeals denied Liggins leave to appeal.

In the instant petition, Liggins asserts several constitutional claims as grounds for habeas relief. First, Liggins argues that post-arrest statements he made while in police custody were improperly admitted as evidence because they were obtained after he invoked his right to counsel. Second, Liggins argues that he was improperly denied his constitutional right to be present at trial due to his absence at pre-trial hearings discussing the potential use of *Sandoval*[1] and *Molineux*[2] evidence. Third, he argues that the Trial Court gave an erroneous reasonable doubt instruction that unconstitutionally diluted the prosecution's burden of proof. Finally, Liggins argues that his sentence was imposed in violation of his Fourteenth Amendment right to equal protection under the law. Respondent asserts that all of Liggins's claims are meritless. In addition, Respondent argues that Liggins's challenge to the Trial Court's reasonable doubt instruction is procedurally barred. For the reasons discussed below, Liggins's petition is DENIED.

## I. BACKGROUND[3]

### A. FACTS

The conviction challenged in the instant petition arises from the November 25, 1996 robbery and murder of Juvenal Borerro ("Borrero"), a 54–year–old bodega owner. Liggins and an accomplice, Jose Martinez ("Martinez"), entered into Borrero's bodega, located in East Harlem. Once inside the bodega, Liggins aimed a loaded gun at Borrero and demanded money. When Borrero refused to comply with the demand, Liggins fatally shot him in the neck.

Liggins fled the scene and went into hiding, where he remained despite his awareness that the police were actively pursuing him in connection with the crime. At one point, a witness saw Liggins with a copy of a reward poster bearing his own portrait. During his time in hiding, Liggins made several incriminating admissions to others that were reported to investigators. Detective Terrence McGhee ("McGhee") ultimately arrested Liggins during the evening of February 20, 1997, three months after the murder. Following his arrest, Liggins continued to make incriminating statements, both oral and written. Liggins made these statements to McGee during the car ride to the station house and once at the station house, as well as during the videotaped interviews conducted by an assistant district attorney. The relevant facts following Liggins's arrest are disputed by the parties.

1. *New York v. Sandoval* entitles a criminal defendant to an advance ruling about the extent to which the prosecution will be allowed to impeach his credibility, should he choose to testify, by cross-examining him about prior criminal acts. 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

2. *New York v. Molineux* permits a defendant's prior criminal and bad acts to be admitted as direct evidence in the prosecution's case under certain circumstances. 168 N.Y. 264, 61 N.E. 286 (1901). Hearings addressing the admission of such evidence are alternatively referred to as *Ventimiglia* hearings. *See New York v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981).

3. The factual and procedural summary is derived from the following documents: Brief of Appellant, *New York v. Liggins*, 19 A.D.3d 324, 797 N.Y.S.2d 495 (App. Div. 1st Dep't 2005) § ("Appellant Brief"); Brief of Respondent, *New York v. Liggins*, 19 A.D.3d 324, 797 N.Y.S.2d 495 (App. Div. 1st Dep't 2005) ("Appellate Opp."); Liggins's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated January 21, 2007 ("Habeas Petition"); Respondent's Memorandum of Law in Support of Answer Opposing Petition for Writ of Habeas Corpus, dated March 13, 2008 ("Habeas Opp."); Petitioner's Reply Memorandum of Law, dated December 2, 2008 ("Habeas Response"). Except where specifically referenced, no further citation to these sources will be made.

Liggins asserts that he immediately and repeatedly requested the presence of an attorney following his arrest and during the trip to the station house. He also contends that he was not informed of his *Miranda* rights until the assistant district attorney conducted the first videotaped statement.

According to the Respondent, McGhee read the *Miranda* warnings to Liggins in the presence of two colleagues at 10:45 p.m. on the night of February 20, 1997, and that at that time Liggins agreed to waive his *Miranda* rights and signed a waiver form to that effect.[4] McGhee then questioned Liggins over several hours during which Liggins made many inconsistent statements about the events leading up to the murder.

McGhee asked Liggins at several points to memorialize his evolving story in signed written statements. Liggins complied with these requests. The next morning, Liggins was questioned by an assistant district attorney on videotape. Liggins again agreed to waive his *Miranda* rights and made a lengthy statement describing his version of the events of November 25, 1996 and his participation in them. At one point, the assistant district attorney confronted Liggins about his differing versions of the events. Liggins's response included a vague reference to a previous request for counsel that had gone ignored. The assistant district attorney continued questioning Liggins, and Liggins continued to make more incriminating statements. At the conclusion of the videotaped statement, McGhee again questioned the defendant and obtained an additional written statement. Later, the assistant district attorney began a second videotaped interview. After being re-advised of his *Miranda* rights, Liggins asked to have an

attorney present for any future questioning. The interview ceased thereafter.

## B. *PROCEDURAL HISTORY*

On February 28, 1997, the People of New York (the "State") filed Indictment No. 1635/97 charging Liggins with murder in the second degree and attempted robbery in the first degree. A second superseding indictment, No. 119/98, was filed on January 21, 1998, charging Liggins with murder in the first degree.

### 1. *Pre–Trial Hearings*

The Trial Court considered several legal issues relevant to the instant petition in pre-trial hearings. First, the Trial Court held a hearing on Liggins's motion to suppress his post-arrest statements. Second, the Trial Court conducted *Sandoval* and *Molineux* hearings to determine the potential role of evidence of prior criminal conduct and bad acts in the trial.

#### a. *Suppression Hearing*

The Trial Court conducted a pre-trial suppression hearing to consider the admissibility of Liggins's post-arrest statements, which included a number of oral and written statements to McGhee and a lengthy videotaped interview with the assistant district attorney. Liggins argued that he twice made requests for counsel that went unheeded. First, he asserted that he requested counsel following his arrest and while being taken to the station house. As evidence of this request, Liggins points to his later reference—during the first videotaped interview with the assistant district attorney—to his invocation of the right to counsel. McGhee accompanied Liggins on that trip and testified that Liggins unequivocally waived his *Miranda* rights, as

---

**4.** Liggins had no recollection of signing the waiver. However, he did acknowledge that the signature on the form was his.

evidenced by a signed waiver form, and at no point requested counsel. Second, Liggins argues that his remark relating to his alleged previous request for counsel constituted an independent invocation of his right to counsel that was ignored when the assistant district attorney continued to question him.

The Trial Court concluded that credible evidence demonstrated that Liggins had not asked for an attorney while he was with McGhee on the way to the station house. In addition, the Trial Court found that Liggins's videotaped allusion to an earlier supposed request for counsel did not by itself constitute an invocation of the right to counsel. The Trial Court instead found that Liggins's offhand comment was made in the process of defending his inconsistent versions of the events of November 25, 1996—not an independent request in itself. The Trial Court thus concluded that Liggins did not invoke his right to counsel until the second videotaped interview by the assistant district attorney, after which questioning ceased. Accordingly, the Trial Court held that Liggins's post-arrest statements could be properly introduced at trial, and denied Liggins's motion to suppress the statements.

b. *Sandoval and Molineux Hearings*

On July 27, 1998, the parties appeared before the Trial Court to discuss a variety of pre-trial matters. At this proceeding, the Trial Court set a September 14, 1998 start date for the trial and requested to meet with the lawyers on Friday, September 11, 1998 ("the September 11th conference") to settle any remaining pre-trial issues. Counsel informed the Trial Court that Liggins would not be able to attend the September 11th conference because of a religious holiday. The Trial Court concluded this would not pose a problem because the September 11th conference would deal only with legal issues.

At that point, the Trial Court turned to discussion of *Molineux* and *Sandoval* issues. Although defense counsel was not prepared to address the issues in full, he agreed at the urging of the Trial Court to allow the State to raise the relevant legal issues. The prosecutor notified the Trial Court of its intent to present *Molineux* evidence to support its case in chief. Defense counsel strenuously opposed this request, arguing that the prosecution's proffered evidence had limited probative value and was highly prejudicial. The Trial Court offered to let counsel address the issue in a letter. The prosecutor then summarized the *Sandoval* evidence it would use to cross-examine Liggins should he decide to take the stand. Defense counsel reserved response on the *Sandoval* issues and proposed to respond in writing. The Trial Court granted this request. By then familiar with the prosecution's proposed *Molineux* and *Sandoval* evidence, defense counsel agreed to submit a written response outlining Liggins's position on the relevant legal issues. Defense counsel filed responsive papers on September 10, 1998.

The State and defense counsel appeared before the Trial Court as planned on September 11, 1998. When the case was called, the Trial Court noted Liggins's absence for the record and announced that the conference was to deal only with previously briefed legal issues. In addition to discussions on outstanding questions relevant to the redaction of evidence, jury selection, and trial scheduling, the Trial Court made rulings on the allowable use of evidence of prior criminal conduct and bad acts after hearing oral argument on the disputed *Molineux* and *Sandoval* evidentiary issues.

2. *The Trial*

Liggins proceeded to a jury trial on September 14, 1998. The State relied on

seven post-arrest statements made by Liggins: four written statements, two oral statements, and a videotaped statement. The jury returned a verdict on September 29, 1998 convicting Liggins of murder in the first degree and Attempted Robbery in the First Degree. Judgment was rendered against Liggins on November 23, 1998. The Trial Court sentenced Liggins to life imprisonment without parole and a concurrent term of fifteen years incarceration.

### 3. *The Appeal*

Liggins appealed the verdict to the Appellate Division. He raised several arguments on appeal. First, he argued that the Trial Court improperly denied his motion to suppress post-arrest statements made after he had asserted his right to counsel. Next, Liggins argued that portions of his *Sandoval* and *Molineux* hearings were improperly conducted in his absence. Third, he claimed that the Trial Court gave an erroneous reasonable doubt instruction that diluted the State's burden of proof. Finally, Liggins argued that his sentence was excessive and imposed in violation of equal protection and due process of law.

On June 30, 2005, the Appellate Division affirmed the conviction. The Appellate Division concluded that Liggins's presence at the initial segments of his *Sandoval* and *Molineux* proceedings "provided him with the opportunity for meaningful input, and that his presence was not required at the subsequent stages." *See New York v. Liggins*, 19 A.D.3d 324, 797 N.Y.S.2d 495, 496 (App. Div. 1st Dep't 2005). Furthermore, the Appellate Division affirmed the Trial Court's denial of Liggins's motion to suppress his post-arrest statements because the Trial Court found that Liggins "did not

make an unequivocal request for the present assistance of counsel until his second videotaped statement, at which time questioning ceased." *See id.* The Appellate Division also concluded that Liggins's challenge to the Trial Court's application and constitutional merits of New York's sentencing regime was "unavailing." *See id.* Finally, the Appellate Division declined to review Liggins's remaining claims because he had not preserved them at trial. *See id.* The Appellate Division noted that even in the case of preservation, it would still reject them on the merits. *See id.*

On October 24, 2005, the New York Court of Appeals denied Liggins leave to appeal. *See New York v. Liggins*, 5 N.Y.3d 853, 806 N.Y.S.2d 173, 840 N.E.2d 142 (2005).

### 4. *The Habeas Petition*

Liggins filed a pro se petition for a federal writ of habeas corpus in the Southern District of New York on February 28, 2007. Respondent filed a motion to dismiss the petition on the ground that the petition was time-barred. The Court appointed counsel for Liggins. After briefing of the time-bar issue, then District Judge Gerard E. Lynch issued a Decision and Order dated December 18, 2007, denying Respondent's Motion to Dismiss and directing Respondent to file a response on the merits of the habeas petition. Liggins's case was subsequently reassigned to this Court, which must now address the merits of Liggins's petition.

In his habeas petition, Liggins raises the same issues he argued in his direct appeal.[5] Liggins contends that: (1) the Trial Court improperly failed to suppress post-arrest statements that were obtained after he asserted his right to counsel; (2) he was

---

**5.** Liggins does not pursue the claim, which was rejected by the Appellate Division, that

the sentence imposed was excessive.

denied his constitutional right to be present at trial because he was not present at the September 11th conference; (3) the Trial Court improperly instructed the jury with regard to the reasonable doubt standard and thus unconstitutionally diluted the State's burden of proof; and (4) the Trial Court's application of New York's sentencing regime violated his right to equal protection under the Fourteenth Amendment.

## II. *LEGAL STANDARD*

### A. *HABEAS REVIEW OF STATE COURT JUDGMENTS*

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the various subsections of § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, this Court's review is limited by certain restrictions on the nature and extent of review that a federal court may conduct in considering a habeas petition. Under § 2254, if a state court adjudicates a petitioner's federal claim on the merits, a federal court on habeas corpus review must defer to the state court's determination of that claim unless such adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court adjudicates a petitioner's federal claim "on the merits," and thus triggers the AEDPA standard of review, when it: (1) disposes of the claim on the merits; and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). The state court need not explicitly refer to either the particular federal claim or to any federal case law. *See id.* The only requirement is that the claim be finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311.

If the state court's adjudication of a petitioner's federal claim is not based on the merits—for example, when the decision rests solely on procedural grounds—the state court's decision on that claim is entitled to no deference. Instead, the federal court must apply a pre-AEDPA de novo review to the state court's disposition of the federal claim. *See Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003).

### B. *EXHAUSTION*[6]

Before seeking federal habeas relief, a petitioner must exhaust all available state court remedies. *See* 28 U.S.C. § 2254(b)-(c). This standard generally requires that the petitioner "fairly present" his claims to the highest available state court, setting forth all of the factual and legal allegations he asserts in his federal petition. *See Strogov v. Attorney Gen.,* 191 F.3d 188, 191 (2d Cir.1999).

Liggins has fully exhausted all of his habeas claims. Liggins raised each claim in the Appellate Division "in terms so particular as to call to mind a specific right protected by the Constitution." *Daye v. Attorney Gen.,* 696 F.2d 186, 194

---

**6.** Under 28 U.S.C. § 2244(d)(1), a one-year limitation period applies to the filing of petitions by state prisoners seeking federal habeas corpus review. The Court need not address that issue here because Judge Lynch, by Decision and Order dated December 18, 2007, determined that Liggins's petition was timely filed.

(2d Cir.1982). Liggins later sought leave to appeal the rejection of his claims to the New York Court of Appeals, the highest available state court, thereby exhausting his state court remedies on each of these claims.

## III. *DISCUSSION*

### A. *POST–ARREST STATEMENTS*

Liggins argues that the Trial Court's conclusion that he had not invoked his right to counsel constituted an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

■ Every "determination of a factual issue made by a State court shall be presumed to be correct." *Id.* § 2254(e)(1). The petitioner can overcome this presumption only if he establishes "clear and convincing evidence" to the contrary. *Id.* To support his claim, Liggins relies on his reference during the first videotaped interview to a previous request for counsel. Liggins asserts that he, as a nineteen-year-old person with limited education, could not understand the legal import of his statements and had no reason to lie about a previous request for counsel. In contrast, Liggins argues that McGhee, a veteran police detective, had every incentive to lie because he knew all of the statements would be suppressed if he revealed that Liggins had asked for counsel before any police interrogation. According to Liggins, the weight of this evidence clearly demonstrates that he had indeed requested counsel immediately following his arrest. Accordingly, Liggins contends that The Trial Court improperly admitted the post-arrest statements.

The Court concludes that Liggins has not offered "clear and convincing evidence" sufficient to rebut the presumed correctness of the Trial Court's factual determinations. *Id.* § 2254(e)(1). Instead, Liggins has demonstrated that the evidence presented at the suppression hearing could be subject to multiple factual interpretations. Because the witnesses' testimony conflicted, the factual issue concerning whether or not Liggins requested counsel depended heavily on the Trial Court's determination of credibility. The Trial Court, having the benefit of live testimony and cross-examination of the relevant parties, determined that McGhee's testimony was more credible and therefore that Liggins had not invoked his right to counsel immediately after his arrest.

■ Furthermore, the Trial Court concluded that Liggins's reference to his alleged previous invocation of his right to counsel during the first videotaped interview did not constitute an independent invocation of the right to counsel and thus did not require questioning to cease. *See Liggins*, 797 N.Y.S.2d at 496. This conclusion is consistent with federal law as determined by the Supreme Court. After a suspect knowingly and voluntarily waives his *Miranda rights,* "law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States,* 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *see also Diaz v. Senkowski,* 76 F.3d 61, 64–65 (2d Cir.1996) (applying *Davis* standard). Invocation of the *Miranda* right to counsel requires "at a minimum, some statement that can reasonably be construe to be an expression of a desire for the assistance of counsel." *Id.* at 459, 114 S.Ct. 2350 (*quoting McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). If a suspect makes a reference to counsel that is "ambiguous or equivocal," questioning need not cease. *Id.* Instead, questioning must cease only if the suspect has "unambiguously request[ed] counsel." *Id. Liggins waived his* right to counsel in writing and did not make an unambiguous request for counsel

until his second video-taped interview, after which questioning ceased. Accordingly, the Appellate Division's determination that Liggins's vague reference to a past request for counsel did not constitute an independent invocation of the right to counsel requiring questioning to cease was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

Given that Liggins does not offer clear and convincing evidence to show that the Trial Court's determination of the facts was unreasonable, and that the Trial Court decision was not contrary to, or an unreasonable application of, law, the Court denies Liggins's petition with respect to Liggins's invocation of the right to counsel and the admission of his post-arrest statements.

### B. *PRESENCE AT LEGAL PROCEEDINGS*

Liggins contends that his right to due process under the Fourteenth Amendment was violated by his absence from pre-trial *Sandoval* and *Molineux* hearings. In his direct appeal, Liggins claimed that his absence from the September 11th conference was a violation of both the United States Constitution and the New York state law right to be present at *Sandoval* and *Molineux* hearings. The Appellate Division rejected Liggins's claims, concluding that his presence at the initial conference discussing *Sandoval* and *Molineux* issues provided him an opportunity for meaningful participation and that his presence was thus not required at the September 11th conference. *See Liggins,* 797 N.Y.S.2d at 496. As a result, the Appellate Division concluded that neither Liggins's federal nor state law rights were violated. Liggins challenges the Appellate Division's ruling as contrary to, or an unreasonable application of, federal law.

The New York Court of Appeals has held that the defendant's presence is required during both *Sandoval* and *Molineux* hearings. *See New York v. Spotford,* 650 N.E.2d 1296, 1298 (N.Y.1995) (holding defendant's presence required at *Ventimiglia/Molineux* hearing); *New York v. Dokes,* 79 N.Y.2d 656, 584 N.Y.S.2d 761, 595 N.E.2d 836, 840 (1992) (holding defendant's presence required at *Sandoval* hearing). However, that court has specifically held that a defendant's right to be present at such hearings does not arise under the federal Constitution, but rather under New York state law. *See New York v. Favor,* 82 N.Y.2d 254, 604 N.Y.S.2d 494, 624 N.E.2d 631, 635–36 (1993) (holding right to be present at *Sandoval* hearing conferred by state law); *Dokes,* 584 N.Y.S.2d 761, 595 N.E.2d at 840 (concluding that right to be present at *Sandoval* hearing ultimately concerned application of New York statutory grant). Liggins recognizes these contrary authorities but requests that this Court find that the presence of a defendant at the entirety of *Sandoval* and *Molineux* hearings is required under the Fourteenth Amendment.

█ The United States Constitution requires that a defendant "be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Although this right is not guaranteed "when presence would be useless, or the benefit but a shadow," *id.* at 106–07, 54 S.Ct. 330, due process mandates a defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence." *Id.* at 108, 54 S.Ct. 330. Thus, a defendant is constitutionally "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would con-

tribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987).

██ The Court concludes that the Appellate Division's rejection of Liggins's claim was not contrary to, or an unreasonable application of, federal law. Because Liggins was present at the first pre-trial discussion of the *Sandoval* and *Molineux* evidence which the government sought to introduce, he had a full opportunity to familiarize himself with the *Sandoval* and *Molineux* evidence sought to be presented, work with his attorney to file responsive papers opposing the State's proposed evidence and meaningfully participate in his defense. The September 11th conference consisted of oral argument by counsel discussing the legal issues presented by the *Sandoval* and *Molineux* briefs previously submitted via letter by defense counsel. The Court thus concludes that Liggins's absence from this final stage of the Trial Court's review of *Molineux* and *Sandoval* evidentiary issues did not undermine the fairness of the proceeding nor detract from the fullness of Liggins's opportunity to defend himself. *See Snyder*, 291 U.S. at 105–06, 108, 54 S.Ct. 330. The Court finds that the Appellate Division's determination that Liggins's absence from the September 11th conference discussing *Sandoval* and *Molineux* evidentiary issues and other questions of law was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).[7] Accordingly, the Court denies Liggins's petition for habeas relief with respect to his presence at the September 11th conference.

## C. *REASONABLE DOUBT INSTRUCTION*

Liggins also challenges his conviction on the grounds that the Trial Court gave an erroneous reasonable doubt instruction that unconstitutionally reduced the State's burden of proof. However, Liggins failed to preserve this challenge at trial, *see Liggins*, 797 N.Y.S.2d at 496, and neither offers cause for this procedural default, nor asserts actual innocence.

### 1. *The Claim Is Procedurally Barred*

After addressing all of Liggins's other claims individually, the Appellate Division summarily found that Liggins's "remaining contentions" were not preserved and therefore not reviewable. *Id.* The Appellate Division further concluded that, even if such claims had been properly preserved, they would be rejected on the merits. Because all of Liggins's claims aside from his challenge to the reasonable doubt instruction had been individually addressed, the Appellate Division's reference to "remaining claims" must have been directed at Liggins's challenge to the reasonable doubt instruction.

██ The independent and adequate state ground doctrine precludes a federal habeas court from considering a claim "if the decision of th[e] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). There are limited circumstances where a federal court may conduct a habeas review of claims resolved on state

---

**7.** Even if Liggins's absence from the *Sandoval* and *Molineux* hearings did violate a federal right, the error would be harmless, especially considering the overwhelming trial evidence against him through his own statements. Habeas relief is warranted only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation marks omitted). Liggins has made no showing that his absence from the September 11th conference had such an effect on the outcome of his case.

grounds. Federal review is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime charged resulting in a "fundamental miscarriage of justice," *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (*citing Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); (2) cause for the procedural default resulting in prejudice, *see Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); or (3) that the procedural bar that the state court applied is not adequate, *see Cotto,* 331 F.3d at 239.

■ Grounds that a district court should consider to determine the adequacy of a state procedural bar include whether: (1) the state court actually relied on the alleged procedural violation, and compliance with the state rule would have changed the state court's decision; (2) state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) the petitioner had substantially complied with the rule given the realities of trial, and that demanding perfect compliance with the rule would serve a legitimate governmental interest. *See id.* at 240.

■ Furthermore, a procedural default does not bar consideration of a federal claim on habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (*quoting Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231

(1985)). The aim of this plain statement requirement is to ensure that the state court clearly and expressly relied on an independent determination of state law in its decision rather than to require the state court to clearly and expressly articulate the grounds for its state law determination. *See Sellan,* 261 F.3d at 311–14 (noting that key inquiry is whether state court relied on state procedural grounds or merits analysis to dispose of federal claim rather than adequacy of the state court's reasoning).

■ Liggins contends that the summary refusal to review his challenge to the reasonable doubt instruction was not a clear and express statement showing that the judgment rested on an adequate and independent state law ground. As a result, Liggins argues that his challenge to the reasonable doubt instruction is not barred because the Appellate Division's reliance on an independent state procedural rule was cursory and imprecise. This argument misconstrues the purposes of the plain statement requirement. While the Appellate Division's summary order did not provide a detailed and reasoned explanation for its refusal to review the reasonable doubt challenge due to lack of preservation, the Court concludes that the Appellate Division clearly and expressly refused to review the reasonable doubt challenge on adequate and independent state procedural grounds.[8]

■ The Appellate Division's determination that Liggin's reasonable doubt

---

8. The Second Circuit has held that summary dismissal of multiple remaining claims for procedural default or failure on the merits is not a clear and express statement constituting a state procedural bar. *See Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810–11 (2d Cir.2000). However, the Appellate Division's summary dismissal of the "remaining claims" in this case could refer only to the reasonable doubt claim, as it was the only

claim not specifically addressed in the opinion. Furthermore, as discussed below, the Appellate Division's determination in this case is easily distinguished because it found Liggins's claim unpreserved and meritless, rather than either unpreserved or meritless. *See Campos v. Portuondo,* 193 F.Supp.2d 735, 744 n. 4 (concluding that use of conjunctive "and" makes clear that judgment rested on state procedural grounds).

claim was unpreserved is a sufficient indication that the state court denied the claim based on state procedural grounds. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir.2005). Although the Appellate Division additionally found that Liggins's claims, if reviewed, would be unpersuasive, the alternative ruling on the merits does not remove the procedural bar created by the independent and adequate state procedural ruling. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *see also Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. 1038 (concluding alternative ruling on the merits does not remove procedural bar created by independent and adequate state law ruling); *Green*, 414 F.3d at 294 (same).

■■■■ The record is unclear as to the grounds upon which the Appellate Division relied in determining that Liggins had not preserved his objection to the reasonable doubt instruction, but it is likely that the Appellate Division relied upon New York's contemporaneous objection rule, C.P.L. § 470.05(2). *See Dunn v. Sears*, 561 F.Supp.2d 444, 454 (S.D.N.Y.2008) (finding state court ruling that challenge was unpreserved likely relied on contemporaneous objection rule); *Rosario v. Burge*, 542 F.Supp.2d 328, 337 (S.D.N.Y.2008) (same). This rule would bar Liggins's claims because a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. *See, e.g., New York v. Hardy*, 4 N.Y.3d 192, 791 N.Y.S.2d 513, 824 N.E.2d 953, 957 n. 3

(2005); *New York v. Gray*, 86 N.Y.2d 10, 629 N.Y.S.2d 173, 652 N.E.2d 919, 921 (1995). The United States Court of Appeals for the Second Circuit recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. *See, e.g., Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir.2007); *Felder v. Goord*, 564 F.Supp.2d 201, 223 (S.D.N.Y.2008).

■■■■ None of the exceptions to the independent and adequate state ground doctrine apply here. First, the independent state grounds relied upon are clearly adequate under Second Circuit precedent. Second, Liggins does not demonstrate either cause for, or actual prejudice resulting from, his failure to preserve his claim challenging the reasonable doubt instruction.[9] Liggins has not asserted, and the record does not reflect, anything that impeded him from preserving this claim. Finally, Liggins has not demonstrated that a failure to consider the reasonable doubt claim will result in a miscarriage of justice. Because the Appellate Division clearly and expressly relied upon an independent and adequate state law ground in addressing Liggins's challenge to the Trial Court's reasonable doubt instruction, the Court concludes that his claim is procedurally barred.

### 2. The Claim is Meritless

■■■■ Even assuming, however, that Liggins's claim challenging the reasonable doubt instruction were properly preserved, the Court would still deny it on the merits. Liggins contends that the following language of the Trial Court's reasonable doubt instruction unconstitutionally diluted

---

**9.** Because Liggins lacks cause for the procedural default, the Court need not consider whether he is prejudiced by his inability to raise the alleged constitutional violation stemming from the Trial Court's reasonable doubt

instruction. *See McCleskey v. Zant*, 499 U.S. 467, 502, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (concluding that prejudice need not be considered where there is no cause for procedural default).

the prosecution's burden of proof: "We're not asking the prosecutor by this standard to prove guilt to the same level of certainty that a scientist might use in a laboratory or mathematician in a laboratory or a classroom. The prosecutor is not held to such an absolute standard." According to Liggins, this instruction suggests "a higher degree of doubt than is required for acquittal under the reasonable doubt standard" and is therefore unconstitutional. *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam).

Federal law does not support Liggins's conclusion. In the cases Liggins cites to support his argument, the Supreme Court did not find instructions unconstitutional that included language explaining that reasonable doubt does not require proof equivalent to "mathematical certainty." *See, e.g., Cage*, 498 U.S. at 40, 111 S.Ct. 328 (finding reasonable doubt instruction unconstitutional for reasons other than "mathematical certainty" language). Instead, the Court found that instruction language equating reasonable doubt with a "grave uncertainty" or "an actual substantial doubt," and requiring only a "moral certainty" in order to convict violated the Constitution. *Id.* at 41, 111 S.Ct. 328. Furthermore, the Supreme Court has recognized that proof beyond reasonable doubt does not require proof the equivalent of mathematical certainty. *See Holland v. United States*, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954) ("The Government must still prove every element of the offense beyond a reasonable doubt though not to a mathematical certainty."). The Appellate Division's alternative rejection of Liggins's challenge to the mathematical certainty language of the

reasonable doubt instruction on the merits therefore was not "an unreasonable application" of "clearly established federal law." 28 U.S.C. § 2254(d)(1). Accordingly, Liggins's petition for relief challenging the reasonable doubt instruction, if preserved, would also be denied.

## D. *NEW YORK STATE SENTENCING SCHEME*[10]

■ Liggins challenges his sentence of life imprisonment without parole on the basis that the New York sentencing procedures applied in his case violated the equal protection clause of the Fourteenth Amendment. Liggins rests his argument on the disparate sentencing procedures applied under New York law to defendants convicted of murder in the first degree based upon whether or not the prosecutor sought the death penalty. If the death penalty was sought, a defendant convicted of murder in the first degree was subject to a separate sentencing proceeding, ordinarily before the same jury that found the defendant guilty. *See* N.Y.Crim. Proc. L. § 400.27(2). If the jury unanimously determined beyond a reasonable doubt that the aggravating circumstances in the case substantially outweighed the mitigating factors, the court was required to impose a sentence of death. *See id.* § 400.27(11)(a), (d). If the jury was unable to reach a unanimous conclusion, the sentencing decision reverted to the judge, who was directed to sentence according to the standard indeterminate sentencing provisions (requiring a minimum term of 20 years to life), in effect, excluding life imprisonment without parole as an option. *See id.* § 400.27(11)(c).

---

**10.** The sentencing scheme described below, and applied in Liggins's case, is no longer in effect. In 2004, the New York Court of Appeals determined that the sentencing scheme's required deadlock instruction violated the state constitution's due process clause. *See New York v. LaValle*, 3 N.Y.3d 88, 783 N.Y.S.2d 485, 817 N.E.2d 341, 357–68 (2004).

The sentencing procedures differed for defendants convicted of murder in the first degree against whom the death penalty is not sought. In such cases, there was no special sentencing proceeding, and sentencing authority was vested entirely with the judge. The judge could sentence the convicted defendant either to life imprisonment without parole or to an indeterminate term of no less than 20 years to life. In other words, if the prosecutor sought the death penalty, only the jury could impose a sentence of death or life imprisonment without parole. However, if the prosecutor did not seek the death penalty, the judge could impose a sentence of life imprisonment without parole. *See Holland v. Donnelly,* 216 F.Supp.2d 227, 240–41 (S.D.N.Y.2002) (describing differential sentencing procedures for defendants convicted of first degree murder). Liggins contends that this sentencing scheme violated the equal protection clause by arbitrarily distinguishing between a defendant against whom the prosecution unsuccessfully sought the death penalty and a defendant against whom the prosecution did not seek the death penalty.

The Appellate Division considered this constitutional challenge and concluded it was "unavailing." *Liggins,* 797 N.Y.S.2d at 496 (*citing New York v. Hansen,* 99 N.Y.2d 339, 756 N.Y.S.2d 122, 786 N.E.2d 21, 24 (2003) (rejecting federal constitutional challenges to New York sentencing scheme)). Furthermore, as Liggins notes, this argument has already been considered and rejected by the Second Circuit. *See Holland v. Donnelly,* 324 F.3d 99, 101 (2d Cir.2003) (adopting district court's analysis and holding that sentencing scheme is constitutional); *see also Holland,* 216 F.Supp.2d at 240–48 (discussing and rejecting constitutional challenge to sentencing scheme at length). The Court declines Liggins's invitation to reconsider this issue, as it is clearly decided by settled precedent of the Second Circuit. The

Court therefore concludes that the Appellate Division's rejection of Liggins's equal protection challenge to New York's sentencing procedures was not "contrary to" or "an unreasonable application" of clearly established federal law. 28 U.S.C. 2254(d)(1). Accordingly, Liggins's claim for relief based on New York's sentencing scheme is denied.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition dated January 21, 2007 of petitioner Korey Liggins ("Liggins") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Liggins has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**